520

DECIDED MAY 20, 1930.

*P. J. Riordan, E. L. Fowler,* for plaintiff.
*Underwood, Haas & Gambrell,* for defendants.

BELL, J. This is a workmen's compensation case. B. T. Richardson, whose wage was $25 per week, sustained injury to a leg, and after he had been paid compensation for a certain period a controversy arose between him and his employer, Etowah Monument Company, as to further payments. Commissioner Land found a permanent partial loss of use of the leg, amounting to 10 per cent., and awarded compensation at the rate of $1.25 per week for 167 weeks. This award was affirmed by the full commission except that the weekly payments were raised to $4. On appeal by the employer and the insurance carrier, the superior court reversed the award of the full commission as to the amount of the payments and made a judgment in accordance with the award of the sole commissioner. The employee on the one side and the employer and the insurance carrier on the other brought respective bills of exceptions to this court. The questions for decision are as to the amount of the compensation to be awarded, and as to the manner of its payment.

Section 32 of the compensation act as amended (Ga. L. 1920, pp. 167, 184; Ga. L. 1923, pp. 92, 95) provides as follows: "In the cases included by the following schedule the permanent par-

tial industrial handicap, in each case, shall be compensated by payments for the period specified, and the compensation so paid for such handicap shall be as specified therein, and shall be in lieu of all other compensation for the permanent partial handicap. . . For the loss of a leg, fifty per centum of the average weekly wages during one hundred and seventy five weeks. . . The compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss. . . The weekly compensation payments referred to in this section shall be subject to the same limitations as to maximum and minimum as set out in section 30." Relying upon the latter clause as to maximum and minimum payments, the employee contends that, although the proportionate diminution in his earning capacity was less than $4 per week, yet, since he had received a weekly wage of a larger sum, he is entitled to compensation at the rate of $4 per week for the remaining period of 167 weeks, section 30 providing that compensation shall not be "less than $4 per week, except when the weekly wages is below $4."

The employer and the insurance carrier insist that, since the weekly wage here was more than $4, section 30 can not have application so as to increase the aggregate amount to which the employee would otherwise be entitled, notwithstanding under the particular facts the *amount* of the weekly payments, so long as they are to be made, should be determined thereunder, because of the provisions in the latter clause of section 32 with reference to "maximum and minimum" payments. We agree with the position taken by the employer and the insurance carrier on both propositions. The material portion of section 30 is as follows: "That when the incapacity from work resulting from an injury is total, the employer shall pay, or cause to be paid, as hereinafter provided for, the employee during such total incapacity, a weekly compensation equal to one half of his average wages, but not more than fifteen dollars per week nor less than four dollars per week, except when the weekly wage is below four dollars, then the regular wages on the date of the accident shall be the weekly amount paid." It is clearly apparent that this section was intended to apply only to cases of total incapacity, and this was not such a case. The employee is therefore not entitled to claim the amount of $4 a week for the

full period of 167 weeks. As to the aggregate amount of compensation to be allowed, his case is governed by the provisions of section 32 to the effect that the compensation for the loss of a leg shall be 50 per cent. of the average weekly wages during 175 weeks, and that the compensation for the partial loss of a member, or the partial loss of the use of a member, shall be such proportion of the payments prescribed for total loss as such partial loss bears to such total loss. Hence, the employee in this case is entitled only to a proportionate compensation for his specific disability.

The provision in section 32, that the payments therein referred to shall be subject to the same limitations as to maximum and minimum as set out in section 30, was not intended to increase the entire amount of the compensation to be paid for a partial handicap falling under the terms of section 32; that is to say, this clause was not intended to prescribe the minimum total amount of compensation to be paid, but had the purpose of providing the manner and terms of payment, so as to prevent the spreading of the total amount over long periods by small installments, except when necessary to do so because the wage itself was small—below $4 per week. Any other interpretation would render sections 30 and 32 inconsistent, and would practically nullify the rule of proportion for partial incapacity as contained in section 32; whereas these sections and every part of each must be construed together and be given such a meaning that the language of both will, if possible, be reconciled. Let us suppose that two men are each receiving wages at the rate of eight dollars per week, one of whom loses a leg, while the other sustains a ten per cent. loss of use of a leg. Was it the intention of the law that each of these men should receive the same compensation, that is, $4 per week for 175 weeks, or was their compensation to be proportioned according to the comparative handicap of each? Common sense will suggest the proportional compensation. Again, if each of such employees was working for a wage of $4 per week, then each, according to the contention of the claimant in the instant case, would be entitled to the full equivalent of his wages for 175 weeks, which as to the one who had suffered the total loss of a leg would probably be entirely just, but which as to the other who had suffered only a ten per cent. loss of use of a leg, would contain a patent inequality as regards both the employer and other employees, since in the latter

case the employee would receive a sum equal to his entire wages, although he had sustained only a slight incapacity and could earn practically as much as he did before the accident.. The combined income of this employee, from wages and compensation, could easily be greater than before the accident,' thus making the injury profitable, and, at the same time, would likely exceed the total income of the employee who was the more seriously·disabled and who therefore had sustained a larger actual diminution in wages.

An award of $4 per week in the instant case, as by an application of section 30, would amount to a proportional compensation for more than thirty per cent. impairment; whereas, under the facts as found by the commission, there exists only a ten per cent. impairment, and we can not agree that the legislature intended the inequalities which would result from the construction contended for by the claimant.

An examination of the compensation statutes of a number of other states will disclose provisions more or less similar to those here under consideration, and it seems to be the general scheme of the acts to reduce the number, and not the amount, of the payments for the partial loss, or loss of use, of a member. For instance, the Kentucky statute provides that for partial disability the compensation "shall be 65 per cent. of the average weekly earnings of the employee, but not less than $5 nor more than $12, multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding 335 weeks nor a maximum sum of $4,000;" but that "whenever the weekly payments under this paragraph would be less than $3 per week, the period may be shortened and the payments correspondingly increased to that amount." Kentucky Laws of 1916, chapter 33, p. 354.

The various provisions of section 32 of our own statute clearly manifest a like intention. For each of the injuries referred to in paragraphs (a) to (q) respectively the employee is to be awarded 50 per cent. of his weekly wages, regardless of the comparative incapacity from the several injuries; but the period of the weekly payments is made to vary widely according to the extent of the resulting handicap. We think the' certain accomplishment of such a result in case of partial loss, or loss of use, of a member was the chief purpose of the provision of section 32· as to maximum and minimum payments, since it is only by this construction that the

clause as to proportioning the compensation for partial handicaps (paragraph r) can be given its proper significance as a co-ordinate provision of the statute.

There is a dearth of authority upon the question here under consideration, and the few cases to be found are not persuasive. Some of them are based upon statutes differing in some degree from the language of the Georgia act, and several were decided by divided courts. Emry v. Cripes, 110 Kan. 693 (205 Pac. 598) ; Kupis v. Wilmington Provision Co. (Del.), 138 Atl. 358; Lewis v. Allied Contractors Inc. (Neb.), 225 N. W. 770. The case of James A. Banister Co. v. Kriger, 84 N. J. L. 30 (85 Atl. 1027), decided by the Supreme Court of New Jersey, is in direct accord with the contention of the employee in the present case; but in the later case of Barbour Flax Spinning Co. v. Hagerty, 85 N. J. L. 407 (89 Atl. 919), the same court, speaking of its decision in the Kriger case, said: "It was only the amount that was subject to variation and variation was prevented by the clause fixing a minimum of $5 per week. The legislature seems to have thought our construction too liberal to the employee, for it amended the act in 1913 immediately after our decision. Pamph. L. pp. 302, 304."

It is noted that the maximum and minimum clause provides only that the *payments* shall be subject to the limitations stated in section 30, not that the amount of the whole compensation shall be so determined. Furthermore, that clause was apparently not intended to qualify the prior language of subparagraph (r) as to proportions; because this paragraph *prescribes no payments within itself,* but merely speaks of a proportion of the "payments above provided," and the succeeding clause, as to maximum and minimum, would therefore be applicable *only to the payments referred to in the several antecedent paragraphs as to specific injuries.* This we think is the correct interpretation of section 32 as a whole.

In view of what has been said, we hold that the employee was entitled to ten per cent. of the total amount of compensation which he would have received for a total loss of his leg or the use thereof, that is, ten per cent. of fifty per cent. of what his weekly wages would have amounted to for the remaining period of 167 weeks, and to this only; but that in order to avoid the small payment of $1.25 weekly, the industrial commission should have proportioned the period of the weekly payments rather than the amount of such

payments, and the superior court should have corrected this error in the award.

The number and not the amount of the weekly payments was held by this court to be the variable element, in the decision in *American Mutual Liability Ins. Co.* v. *Brock,* 35 *Ga. App.* 772 (2) (135 S. E. 103). See also Galloway Coal Co. *v.* Stanford, 215 Ala. 79 (109 So. 377); Lewis *v.* Allied Contractors Inc., supra; Phonville *v.* New York & Cuba S. Co., 226 N. Y. 622 (123 N. E. 258); Knoxville Power & Light Co. *v.* Barnes, 156 Tenn. 184 (299 S. W. 772); and compare section 45 of the Georgia compensation act. The *Brock* case was reviewed and reversed by the Supreme Court, but not on this point. 165 *Ga.* 771 (142 S. E. 101). Nothing contrary to this ruling was intended to be held in *South* v. *Indemnity Insurance Co.,* 39 *Ga. App.* 47 (146 S. E. 45), notwithstanding certain language in the decision in that case. The questions here raised were not involved in the *South* case.

Even before we decided the *Brock* case the industrial commission had adopted the practice of reducing the number of the weekly payments rather than the amounts. The courts will take judicial cognizance of the practice of the departments of government, and may give weight thereto in the construction of statutes. *Griner* v. *Baggs,* 4 *Ga. App.* 232 (3), 234 (61 S. E. 147); *Temple Baptist Church* v. *Georgia Terminal Co.,* 128 *Ga.* 669, 680 (58 S. E. 157); *Carroll* v. *Wright,* 131 *Ga.* 728 (4), 736 (63 S. E. 260).

*Judgment in No. 19983 affirmed; in No. 19984 reversed. Stephens, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting. As has already been shown by the majority opinion, Commissioner Land found that the claimant had a ten per cent. disability of his leg, and allowed him compensation at the rate of ten per cent. of one half of his weekly wages, that is to say, $1.25 per week for the remainder of the period of 175 weeks, amounting to 167 weeks, as provided by section 32 of the workmen's compensation act. On appeal to the full commission, the finding of fact by Commissioner Land as to the ten per cent. impairment was affirmed, but the full commission awarded the claimant $4 per week for the remainder of the period, applying the minimum-payment provision of section 30. On appeal by the insurance carrier the superior court of Fulton county set aside the judgment of the full commission, and substituted

therefor the original award of Commissioner Land, that is to say, the court awarded the claimant $1.25 per week for the remainder of the 175 weeks. To this judgment of the superior court, the claimant excepts, and the insurance carrier files a cross-bill insisting that Commissioner Land, the industrial commission, and the superior court all erred, in that the period of the weekly payments should have been proportioned, rather than the amount of the weekly payments, so that the award should have been $12.50 per week (one half of the weekly wage) for ten per cent. of the period covered by the allowance. In order to make clear my own views, it seems necessary to quote the material portions of section 32 of the compensation act, which are as follows: "In the cases included by the following schedule, the permanent partial industrial handicap, in each case, shall be compensated by payments for the period specified, and the compensation so paid for such handicap shall be as specified, and shall be in lieu of all other compensation for the permanent partial handicap. In addition to the compensation provided in the schedule for permanent, partial handicap, compensation for total incapacity for work, as provided in section 30, shall be paid, but compensation for total incapacity for work shall in no case be paid for a period longer than ten weeks. . . (o) for the loss of a leg, fifty per centum of the average weekly wages during one hundred and seventy five weeks. . . (r) . . The compensation for partial loss of or partial loss of use of a member . . shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss. . . The weekly compensation payments referred to in this section shall be subject to the same limitations as to maximum and minimum as set out in section 30." Section 30 deals with total disability, and in order to make clear its provisions with reference to the maximum and minimum limitations of the benefits prescribed as referred to by section 32, it is necessary to quote the entire section 30, which is as follows: "When the incapacity for work resulting from any injury is total, the employer shall pay, or cause to be paid, as hereinafter provided for, the employee during such total incapacity, a weekly compensation equal to one-half of his average wages, but not more than fifteen dollars per week nor less than four dollars per week, except when the weekly wage is below four dollars, then the regular weekly wages on the date of the accident shall be the weekly

amount paid; and in no case shall the period covered by such compensation be greater than 350 weeks, nor shall the total amount of compensation exceed $5,000.00."

As I construe the two sections, both the maximum and the minimum compensation are made to apply with exactly the same and equal force to compensation allowable under section 32, relating to permanent industrial handicaps, as they do to the compensation provided for by section 30 relating to total incapacity to work. Accordingly, I must construe section 32 as related to section 30 of the statute as follows: In addition to not more than ten weeks compensation for total incapacity, the full compensation in a case of permanent partial industrial handicap, consisting of the loss of a leg, shall be fifty per centum of the average weekly wages during 175 weeks, and if such permanent partial industrial handicap consists of only the partial loss of or partial loss of the use of such member, the compensation shall be such proportion of the payments above provided for total loss as such partial loss bears to such total loss, but with the limitation that not more than $15 per week, nor less than $4 per week, shall be allowed, except when the weekly wage is below $4, in which case the regular wages on the date of the accident shall be the weekly amount paid; and in no case shall the period covered by such compensation be greater than 350 weeks, nor shall the total amount of compensation exceed $5,000.

It is apparent that the injury involved in the instant case comes squarely under section 32 as related to section 30 of the compensation act, inasmuch as the industrial handicap relates to the permanent partial loss of the use of a leg. If the loss of the leg had been total, since the claimant was receiving a wage of $25 per week, it is clear that in addition to whatever he might have been entitled to by reason of a total disability, he should have received one half of his wages, or $12.50 per week, for a period of 175 weeks, less whatever payments thereon had already been advanced at the time of the award. But since, under the findings of the commission, there was only a ten per cent. loss of the use of the member, it is apparent that the claimant would have been entitled to an amount represented by but ten per cent. of his weekly wages for a period of 175 weeks, but for the additional provision contained in section 32 of the act that "the weekly compensation payments referred to in this section shall be subject to the same limitations

as to maximum and minimum as set out in section 30," which clause of section 30 provides that the weekly compensation shall not be more than $15 a week nor less than $4 per week, except when the weekly wage itself is below $4. Construing these provisions of section 32 and 30 together, as required by the terms of the statute, it is my opinion that since the claimant was receiving more than $4 per week, he was entitled to an amount represented by the minimum weekly compensation of $4 during the specified period of 175 weeks. It is true, as pointed out in the majority opinion and by the opinion of the judge of the superior court, that such an award would be equivalent to an allowance for a thirty per cent. rather than a ten per cent. disability of the member, but the General Assembly has seen proper, by the provisions contained in the statute, to set both a minimum and a maximum allowance, operating for or against a claimant receiving as much as such minimum wage. Any such provision for a maximum and a minimum compensation which the legislature sees proper to impose renders inevitable such inequalities as have been pointed out, but the legislature has deemed it wise and proper to declare that any compensable permanent industrial handicap shall receive not less than $4, and not more than $15 per week for the period prescribed, unless the wage itself shall be less than such minimum amount.

This situation is recognized by the writer of the text in the Corpus Juris supplement to 40 Cyc. 96, § 88, as follows: "In this connection it should be noted that the provision of the statute for a minimum weekly award may in a particular case render the award for a minor injury the same as would have been the award for a greater injury according to the schedule, where the number of weeks is fixed by the statute, and only the amount is subject to variation;" citing Banister *v*. Kriger, 84 N. J. L. 30 (supra). The New Jersey case cited was, as is pointed out by the majority opinion, referred to in the case of Barbour Flax Co. *v*. Hagerty, 85 N. J. L. 407 (supra), the latter case being distinguished from the Kriger case, in that in the Kriger case the number of weeks during which compensation should be paid was fixed by the statute, and the amount only was subject to variance, while in the Hagerty case there was no statutory period fixed during which payments should continue. It was stated in the Hagerty case that the New Jersey Legislature must have felt that the rule of the Supreme Court of

New Jersey in the Kriger case was too liberal to the employee, since the compensation law was amended soon thereafter. An examination of the New Jersey session laws of 1913 indicates, however, that the amendment referred to simply shortened the time during which an employee might be entitled to compensation on account of the loss of a portion of a finger or thumb, and no change or reference was made to the application of the minimum compensation provision to such injuries. In the later case of Maziarski v. Ohl, 86 N. J. L. 692 (93 Atl. 110), decided after the amendment of 1913 referred to, the ruling made in Banister v. Kriger was reaffirmed. In the case of Kupis v. Wilmington Provision Co., 138 Atl. 358, Justice Rice, of the Supreme Court of Delaware, in a well-considered opinion, applied the minimum provision of $5 per week in a case where the claimant's disability consisted of an impairment to the extent of 35 per cent. of the use of a leg, and where he would have been entitled to a lesser amount but for the application of the minimum limitation. In Emry v. Cripes, 110 Kan. 693 (supra), the Supreme Court of Kansas applied the statutory limitation providing a minimum compensation payment of $6 per week, to a case where the claimant had suffered a loss of from fifty to seventy-five per cent. of the use of a hand. Under the Kansas statute, for the total loss of a hand, the claimant would have been entitled to one half his weekly wages, or $10 per week, for 150 weeks, but the statute provided that in cases of partial disability not covered by the schedule a claimant should receive, during the period of such partial disability, but not exceeding eight years, sixty per cent. of the difference between the amount he was earning prior to the injury and the amount he was able to earn after such injury, and the Supreme Court of Kansas, with one Justice dissenting, ruled that the claimant was entitled to be paid, on account of the impairment of the use of his hand, at the rate of $6 per week for eight years, although it appeared from the facts that this would amount to more than twice what he would have received for the loss of a hand. It thus appears that most of the courts have applied the minimum limitation as prescribed, despite the inevitable inequalities which must result from any such provision of the statute.

The policy of this State in prescribing both a minimum and a maximum limitation is not, however, a onesided rule, since it

applies in favor of the employer in fixing the maximum amount with the same force and effect as it works in favor of the employee in prescribing the minimum amount. Under the rule applied by the majority opinion, neither the minimum nor the maximum is in force in cases of partial loss of the use of a member under section 32, and there would be nothing to prevent an employee who might be receiving a high weekly wage from receiving many times the maximum prescribed by the limitation. The policy of the law seems to be merely to provide for an injured employee such compensation as will relieve distress during the period of his total or partial disability, and the rigidity of the minimum-and-maximum rule works in favor of the employee receiving a low wage and against an employee receiving a high wage, it being provided that no employee who is entitled to such a benefit at all shall receive less than $4 per week, and that none shall receive more than $15 per week during the prescribed period.

My brethren indicate that the maximum-and-minimum limitation clause was evidently intended to provide the *manner* in which the compensation should be paid, as to the maximum and minimum weekly payments, so as to prevent the spreading of the total amount over long periods of small payments, but it does not seem that the provision for a *maximum* weekly payment could possibly be thus explained, and since the majority opinion ignores the provision as to the $4 weekly payments, in directing how the compensation in the instant case shall be paid, by directing the payment of $12.50 per week for ten per cent. of the disability period, neither does it appear that the provision for *minimum* payments could for any such reason be construed and explained. The only force and effect which it would seem can be given to the prescribed minimum limitation is to apply it just as it reads, just as the language provides, —that is, to allow the stipulated benefits in cases of partial impairment, for the prescribed period, with the proviso that in no case shall such benefits be less than $4 or more than $15 per week.

With reference to the point made in the cross-bill of exceptions, pertaining to *how* the payments should be made in case of a partial rather than a total loss of the use of a member, counsel cite *American Mutual Liability Ins. Co.* v. *Brock, 35 Ga. App.* 772, and *South* v. *Indemnity Ins. Co., 39 Ga. App.* 47 (supra). In the *Brock* case it was held that in a permanent industrial handicap, involving a

partial rather than a total loss of the use of a member, the commission should proportion the number of the weekly payments rather than cut down the amount of such payments. With respect to the *South* case, as pointed out in the majority opinion, it was really not intended in that case to deal with the method of payments at all, as no such question was there raised, the sole question being *what* benefit the employee was entitled to, rather than the method of its payment. In the *South* case, there had been a previous adjudication upon the impairment of the member. It had been first determined that there was a total loss of the use of the injured member, and payments had been made over a long period on the basis of that judgment. Subsequently, on application of the employer on the ground of a change in condition, the commission found that the member was no longer totally impaired, but was only partially impaired, and the employer contended that because it had already paid a sufficient sum under the first judgment to cover compensation on the basis of the reduced rate for the entire period, it should not be required to pay anything further. The ruling of this court was to the effect that the employee was entitled to all he had received under the previous judgment, and that upon a new adjudication being made a new judgment should be entered under which he would be entitled to compensation in a lesser and proportionate amount for the remainder of the period. However, the language of the second division of the syllabus seems to set forth not only how much, but the manner and method of payment, and that in a way contrary to the rule laid down in the *Brock* case, and it is therefore necessary to settle the rule so that the commission may know whether the number of weekly payments or the amount of the weekly payments shall be cut down and proportioned when the permanent industrial handicap results in a partial rather than a total impairment of a member.

Upon a reconsideration of the *Brock* case and of the *South* case, and of such foreign authority as could be found and consulted, I have personally reached the conclusion that the rule implied in the *South* case relative to the method of payment is correct, rather than the previous rule laid down in the *Brock* case, in which the writer had concurred. This construction might not be reasonable, and its application might not be feasible, but for the provision prescribing a maximum-and-minimum limitation. It appears

to me that this limitation was embodied in the act so as to avoid the necessity for making small fractional payments growing out of a slight injury to a member, resulting in a permanent industrial handicap. The language of section 32 (r) seems itself to imply that the *payments* rather than the period shall be proportioned, the section providing that "the compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be such proportion of the *payments* above provided for total loss as such partial loss bears to total loss." It also appears to the writer that the *Brock* case is inconsistent with the provision of the statute which specifically provides for a rehearing and readjudication on the motion of either party on account of a change in the condition of the injured employee. Under the rule of the *Brock* case, whereby payments are greatly accelerated, neither the employer nor the employee is given an opportunity to claim the rights and benefits given him under the statute relative to a change in condition. So far as I am able to see or understand, the proportioning of the payments, rather than cutting down the number of payments, will, in all manner of contingencies, work out better and more smoothly than the other method. Take, for example, a case such as the *South* case, where there has been a change in the condition of the employee. In the *South* case he was first awarded full compensation for the total loss of the use of a member, and payments were made for a long period under that judgment. It was afterwards ascertained, upon a readjudication, that the employee had recovered to such an extent that the member was impaired only to the extent of fifty per cent. It seems that under that particular situation either method of proportioning the compensation could be applied with justice to both parties. Under the rule in the *Brock* case, if he had received compensation for full disability for one half of the period, he could receive the remainder of his benefit by being paid like weekly compensation for one half as long a period as he had already been compensated for. But if, on the other hand, it were a case where the employee's condition had become worse instead of better, and the original judgment for a small disability to the member should be superseded by a subsequent judgment allowing compensation for the total loss of the use of such member, it would seem that the rule of the *Brock* case for accelerated payments would involve insuperable complications, in view

of section 45 of the statute, providing for a new award on account of a change in condition, but stipulating that it should not affect monies already paid.

As I understand and construe the statute, its express language provides that the "payments" rather than the weeks should be apportioned, and this method seems to work in harmony with all the other provisions of the act; which would not be the case in applying the rule laid down in the *Brock* case. It perhaps might be suggested that the rule which the writer here indicates could work a hardship or injustice by reason of the fact that the smaller payments might not be sufficient to tide over an employee during the period immediately following the accident, whereas the larger payments might better meet the immediate emergencies. Even this idea, however, seems to have been in the minds of the law makers. Not only does the statute take care of such an emergency by providing special and additional compensation as for total disability for a period not longer than ten weeks, but by section 41 of the statute it is further provided that any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of the act were not due and payable when made, may, subject to the approval of the industrial commission, be deducted from the amount to be paid as compensation. In this way the employer may, with safety to himself, meet the requirements of any emergency, and can shorten the period of the payments by adding to the amount of the weekly payments any sum necessary to meet any immediate and extraordinary demand.

The foreign authorities would seem to indicate that except in states where the statutes, contrary to ours, specifically provide for an apportionment of the period instead of an apportionment of the amount, the rule adopted is that indicated in the *South* case and by this dissent. The only case which seems to at all sustain the ruling in the *Brock* case is that of Lewis *v.* Allied Contractors (Neb.), 225 N. W. 770, in which there is a strong dissenting opinion by Justice Good. The decisions in Knoxville Power & Light Co. *v.* Barnes (Tenn.), 229 S. W. 772, Phonville *v.* New York &c. S. Co., (N. Y.), 123 N. E. 258, and Galloway Coal Co. *v.* Standford, 215 Ala. 79 (supra), cited in the majority opinion, are all based upon statutory provisions in force in those States, expressly stipu-

lating that in cases of permanent partial industrial handicaps the period of compensation, rather than the amount of the weekly payments, shall be apportioned. In Kupis *v.* Wilmington Provision Co., the Delaware court, in construing a provision of the workmen's compensation law of that State, similar in import to the Georgia statute, said: "We are of the opinion that when the Legislature used the word 'amount' in subsection (c), paragraph 20, amount of compensation was meant, and we see no reason to believe that period of compensation was intended. The Legislature seemed to have exercised great care in using the expression 'the period' or 'number of weeks' when it wished to denote the length of time, . . and to denote money to be paid as compensation by the use of the word 'amount' as in subsection (c), paragraphs 14 and 20. We are of the opinion that the board was in error when it proportioned the period of compensation, and are of the opinion that it should have proportioned the amount of compensation."

While the workmen's compensation act is in derogation of the common law, it has been uniformly held by the Supreme Court and by this court that in view of its remedial nature, it should be so liberally and broadly construed as to effect its general purpose in every instance in which its language is such as to render judicial interpretation necessary. *Van Treeck* v. *Trav. Ins. Co.,* 157 *Ga.* 204 (121 S. E. 215) ; *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (118 S. E. 786) ; *Austin Bridge Co.* v. *Whitmire,* 31 *Ga. App.* 560 (121 S. E. 345). The manifest purpose of the statute was to afford relief to employees who, at common law, by reason of the fellow-servant rule and the doctrine of assumption of risk, were deprived of any means of obtaining compensation for injuries incurred during the course of their employment, and that such relief should be in the form of weekly payments, sufficient, within the limitations as to maximum and minimum prescribed by the act, to supply the deficiency in the earning capacity of the employee during his period of disability. Necessarily the periods prescribed within which compensation should be paid on account of specific injuries are more or less arbitrary, as is the provision that in no event, regardless of the extent of the injury or the earning capacity of the employee, shall a claimant be compensated for a greater period than 350 weeks or in a greater amount than $5,000, but the periods named would seem to be in keeping with the

general purpose of the assembly that the payments to be made should be reasonable, and over a reasonable length of time. When it is considered that section 32 of the act deals with permanent injuries, the limitations as to time must necessarily be arbitrary, and in this view the application of the $4 per week minimum, where the wages amount to that much or more, is not unreasonable. Under the construction applied to the act by my colleagues, the claimant in the instant case will receive, in the aggregate, for a *permanent* industrial handicap, a little more than two hundred dollars. It seems to me that this construction of the act is strict and strained, rather than liberal, and that under the very terms of the statute, and certainly under the liberal construction which should be given it, the claimant is entitled to $4 per week for the period named in the statute, in accordance with the award made by the full commission, which in my opinion was in all respects correct.