## 24072. HELMS *v.* CONTINENTAL CASUALTY COMPANY *et al.*

DECIDED DECEMBER 17, 1934.

*T. Felton Bowden,* for plaintiff. *T. Elton Drake,* for defendants.

SUTTON, J. On August 11, 1931, C. W. Helms sustained an injury to his right leg, arising out of and during the course of his employment with the Atlanta Terra Cotta Company. The continental Casualty Company was the insurance carrier of the employer. The parties entered into an agreement under which compensation was paid to the claimant at the rate of $11 per week for

seven weeks. At the end of this period Helms returned to work, and upon a subsequent change in condition he was paid for twelve and one sixth weeks at the rate of $11 per week. It was then determined that the claimant had a 50 per cent. disability to his leg, and he was thereafter paid at the rate of $5.50 per week for nine and four sixths weeks. Then in October, 1932, it was further determined that Helms had only a 20 per cent. permanent partial disability to said leg, and the insurance carrier of the employer from that time on paid him at the rate of $2.42 per week for 111 weeks. This was paid under authority of the decision in *Richardson* v. *Maryland Casualty Co.,* 41 *Ga. App.* 520 (153 S. E. 524), at $11 per week. At the conclusion of this period when Helms had been paid $533.50, or for a period of 140 and a fraction weeks, the insurance carrier stopped payments. Helms thereupon filed his claim with the Department of Industrial Relations. The following award was rendered by Director Whitaker, and, on appeal, affirmed by the full department:

"This claim came on for a hearing before me on May 23, 1933, at the State Capitol, Atlanta, Georgia. The purpose of this hearing was to determine the amount of additional compensation, if any, due C. W. Helms for injuries sustained on August 19, 1931, and involves an interpretation of section 32 of the act, the Department having refused to approve an agreement submitted by the insurance carrier and the employee, dated April 1, 1933, which provided for the full payment of compensation of 48-1/2 weeks for a 22% partial permanent loss of use of the leg. It was agreed by the parties that this claimant has sustained a 22% permanent partial loss of use of the leg, and that this percentage was established by agreement based upon the examination of Dr. Goodwyn, dated October 12, 1932, and followed a second operation which this claimant had performed in his own behalf more than a year after he sustained his injuries. The record in this case discloses that the parties entered into an agreement to pay and receive compensation immediately following the injury, at the rate of $11.00 a week, and continued the payments under this agreement for seven weeks. The claimant returned to work for a short time and was laid off. The record further discloses that the claimant suffered from his injury continuously up until May, 1932, when he went to the Grady Hospital for an operation on his leg and was required to

use crutches for some considerable time after the operation and filed a claim for compensation June 17, 1932, which was assigned but not held for the reason that the insurance carrier again resumed the responsibility for the claimant's changed condition and entered into another agreement, dated August 23, 1932, which provided for the payment of compensation at the rate of $11.00 a week from May 24, 1932, for a 50% permanent partial loss of use of the leg. It was further stipulated in this agreement that all of the payments over and beyond the ten weeks healing period shall apply on any specific disabilities. Before the Department had approved this agreement a subsequent agreement was submitted, dated October 28, 1932, which provided for the payment of compensation at $11.00 per week for 38-1/2 weeks, covering a 22% loss of use of the right leg. This agreement was not approved by the Department, because of the error in calculation of the amount due the claimant under the agreed facts in the case. This case is now before me for the purpose of construing section 32 as applied to the facts in this case, it being undisputed that the claimant was injured as alleged and that he had suffered continuously with his leg until finally the permanent partial loss of use of his leg was established at 22% on October 28, 1932. It was further agreed and admitted by all parties that he had received compensation at the rate of $11.00 per week for 48-1/2 weeks. The question now for determination is whether or not the insurance carrier should take credit for the monies paid him instead of the number of weeks paid under the different agreements to pay and receive compensation prior to the maximum improvement, and the percentage of his permanent partial loss of use of his leg was determined. Under the *South* case (and this director holds it controlling in this case), it appears that the insurance carrier is only entitled to take credit for the number of weeks paid until the maximum improvement has been reached.

"For a total loss of the use of the leg this claimant would have been entitled to ten weeks temporary total disability and one hundred and seventy-five weeks at the rate of $11.00 a week. He had been paid compensation at the rate of $11.00 a week, or this amount was due when the maximum improvement was reached in this case, of 28-5/6 weeks. At the time maximum improvement was reached it was then for the first time established that his case

could be properly classified under section 32 and rated according to his percentage of permanent partial disability. The recovery then became limited to 185 weeks, representing ten weeks temporary total disability and one hundred and seventy-five weeks for the partial loss of use of the leg, and, after deducting the 28-5/6 weeks that had been due and payable to this claimant prior to the establishment of the percentage of disability, there remains due and payable at a reduced rate of 22% of his payments for a period of 156-1/6 weeks, which should have been paid for his 22% permanent partial disability in addition to the 28-5/6 weeks already paid him. These payments should have been reduced to $2.42 per week, which is 22% of $11.00 per week, and continued for the remainder of the 185 weeks, payable, however, under the *Richardson* case, at $11.00 a week. Under the construction of the law and the facts in this case, the director holds that the insurance carrier, on October 28, 1932, should have reduced the payments to 50% loss of use of the leg, as per the agreement of file, for a period of 9-4/6 weeks, and then reduced them to 22% or $2.42 per week, and continued at this rate for the remainer of 156-1/6 weeks. From the agreements and the admissions in this case, the director finds as a matter of fact and of law that the wages of this claimant at the time of his injury were $22.00 per week; that he was temporarily totally disabled for a period of eight weeks and entitled to compensation for seven weeks for the temporary total disability at $11.00 per week, making a total of $77.00; that he again became disabled on May 24, 1932, and was totally disabled until August 17, 1932, for a period of 12-1/6 weeks, and was entitled to compensation for this disability in the amount of $133.83 and that from August 17, 1932, he had a partial disability which was agreed to be 50%, which continued to October 24, 1932, a period of 9-4/6 weeks, and the payments during this period should have been at the rate of $5.50 per week, amounting to $53.16, making a total compensable disability of ten weeks temporary total disability and a 50% partial loss of use of the leg for 28-5/6 weeks, amounting to compensation in the sum of $263.99; and, further, that following this he had a 22% loss of use of the leg and was entitled to receive compensation in addition to that which he had already been paid, at the rate of $2.42 per week, beginning October 24, 1932, and continuing until $377.92 had been paid, making a total compensation for his disability of $641.91.

"The record shows and the director finds that the insurance carrier paid this claimant during the period of his disability $533.50 or a period of 48-1/2 weeks, if calculated and made retroactive back to the date of his injury. The director further finds that the insurance carrier would not be permitted to take credit for the monies paid in this case but should have reduced his compensation on the date his disability was reduced, and continued to pay him at the reduced rate for the remainder of the period involved, as provided in section 32 of the act. The director, therefore, finds that the insurance carrier in this case is still due this claimant, under the facts and the law in this case, the difference between $533.50 and $641.91, or $108.41, this being the amount of the additional compensation due this claimant for his 22% permanent partial loss of use of his leg in addition to that which has already been paid. The Atlanta Terra Cotta Company, employer, and/or the Continental Casualty Company, insurer, are directed to pay C. W. Helms compensation at the rate of $11.00 a week, beginning as of April 1, 1933, the date of the last payment, and continue to pay him at this rate until the amount of $108.41 has been paid, this being the final payment of compensation for his 22% loss of use of the right leg."

It is the opinion of this court, after careful consideration of the facts of this case, as applied to the pertinent sections of the workmen's compensation act and the decisions of the appellate courts upon this subject, that the award of the Department of Industrial Relations was correct, and the opinion of the single director accompanying and explaining the award aptly expresses the principles of law and their reasonable application to this controversy.

There is nothing in section 32 of the act or in the decision in *Travelers Insurance Co.* v. *Reid,* 178 *Ga.* 399 (173 S. E. 376), reversing the decision in 46 *Ga. App.* 168, and the opinion of this court in that case (s. c. 49 *Ga. App.* 317, 175 S. E. 414), conforming to the opinion and judgment of the Supreme Court therein, that can be properly construed as overruling the decision in *South* v. *Indemnity Insurance Co.*, 39 *Ga. App.* 47 (146 S. E. 45), which clearly followed section 45 of the compensation act, providing for hearings in cases of a change in the condition of the claimant, and which specifically provides that no review thereunder shall affect any award as regards any moneys paid.

Furthermore, as regards an award under section 45 of the act,

after a change in condition, see *U. S. Casualty Co.* v. *Smith,* 162 *Ga.* 130 (133 S. E. 851) ; *American Mutual Liability Ins. Co.* v. *Hampton,* 33 *Ga. App.* 476 (127 S. E. 155) ; *Globe Indemnity Co.* v. *Lankford,* 35 *Ga. App.* 599 (134 S. E. 357). In such a case, as regards an award under a change in condition, the employer and insurance carrier are given credit for the weeks for which they have paid the employee, and not for the amount of money which they have paid him under the previous award or agreement. To hold otherwise would be to affect such previous award or agreement as regards moneys paid, and thereby nullify the meaning of section 45 of the workmen's compensation act. It follows that the judge of the superior court erred in deciding this case, on appeal, in favor of the employer and insurance carrier.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*