24997. FIDELITY & CASUALTY CO. *et al. v.* LECKIE.

DECIDED DECEMBER 24, 1935. REHEARING DENIED JANUARY 27, FEBRUARY 13, 1936.

*Douglas Tucker, Neely, Marshall & Greene,* for plaintiffs in error.
*Charles W. Bergman,* contra.

JENKINS, P. J., The claimant received an arm injury on February 13, 1934. Beginning February 20, 1934, and continuing for 10 weeks to May 1, 1934, the employer and his insurance

carrier paid to the claimant $9 a week, representing one half of the weekly wages of $18 a week, and covering the amount recoverable for temporary total disability under the Code of 1933, §§ 114-404, 114-406. These $9 weekly payments were continued from May 1 through October 8, 1934, with the understanding by the employer and the insurance company that such payments should be taken as advances against the compensation which might be awarded by the department, rather than as for compensation for the then-existing condition of the claimant. A hearing was had on October 11, 1934, when the department made the following award: "That the claimant had a total loss of use of his right arm from the date of the accident until July 25, 1934. Allowing one week for the waiting period, compensation is therefore awarded the claimant in the sum of $9 per week as temporary total disability from the 20th of February, 1934, for a period of ten weeks, This total disability period ended on May 1st, 1934. Compensation is further awarded the claimant in the sum of $9 per week from May 1st, 1934, until July 24, 1934, a period of 12 weeks in the sum of $9 per week for the total loss of use of the said arm. The director finds that on and after July 24, 1934, the claimant had a permanent partial loss of use of said arm of 33⅓%. Compensation is therefore further awarded the claimant in the sum of $3 per week for a period of 188 weeks for the partial loss of use of said right arm. . . All money now due the claimant as compensation under the terms of this award is payable at once." It was further ordered that, "instead of paying the sum of $3 per week for a period of 188 weeks, the compensation shall be increased to $9 per week, and the number of weeks shall be decreased to 62⅔." On exceptions by the employer and insurer to a judgment of the superior court affirming this award, they make no attack on the method of payment by shortening the number of weeks and increasing the weekly payment; but, apparently ignoring the twelve-weeks period of compensation for the total loss of use of the arm, from May 1 to July 24, 1934, contend that, the claimant being entitled only to the $3 a week for 200 weeks as for a one-third partial loss of use of his arm, amounting to $600, the plaintiffs in error are entitled to a credit on that amount of the sums already paid, $9 a week for 23 weeks from May 1, 1934 to October 8, 1934.

No exception being taken by any of the parties as to the failure to allow the $4 weekly minimum fixed by the statute, or as to the method of payment by shortening the final 188 weeks period, no adjudication as to these questions is made. See, in this connection, *United States Fidelity & Guaranty Co.* v. *Edmondson*, 179 *Ga.* 590, 594 (176 S. E. 406). It appears, however, without dispute, that while the plaintiffs in error, prior to July 25, 1934, in their $9 weekly payments only satisfied the provisions of the award during that period, during the subsequent period of 10 weeks from July 25 and up to October 8, 1934, they continued to pay $9 a week instead of the $3 due under the terms of the award; and that, subject to the approval of the department, they were therefore entitled to a credit for this $60 excess, which does not appear to have been passed on or determined by the department. As to the $60 of payments already made in excess of the award, the department would be authorized, under the provisions of the Code, § 114-415, to deduct this amount from the compensation awarded "by shortening the period during which compensation must be paid," rather than "by reducing the amount of the weekly payments." Therefore the judgment is affirmed with direction that, upon the remand of the award to the department, it shall pass on and determine the question whether the $60 excess payment be allowed. Under the ruling in *Liberty Mutual Ins. Co.* v. *Clay*, 180 *Ga.* 294 (178 S. E. 736), "an award should not be withheld for the purpose of adjusting the compensation on the basis of the condition of such member after maximum improvement has been reached." The direction here given is not to be construed as in contravention of that rule, but merely as a recognition of the right of the department under the Code, § 114-415, to approve excess emergency payments made prior to any request for an adjudication on account of total or partial loss of use of a member.

*Judgment affirmed, with direction. Stephens and Sutton, JJ., concur.*

### ON MOTION FOR REHEARING.

JENKINS, P. J. As stated in the original opinion, the employer and the insurance company, apparently ignoring the adjudication by the Department of Industrial Relations as to the total loss of use of the arm for a period of 12 weeks from May 1 to July 24, contend that the claimant was entitled only to $3 a week for the

entire 200 weeks, based upon a one-third partial loss of use of his arm, which the department found was the fact subsequent to July 24. On the admitted $600 paid or to be paid, what they now claim is apparently an additional credit of $6 weekly as for alleged over-payment for 23 weeks from May 1, 1934, to October 8, 1934. By the original opinion provision was made, subject to the approval of the department, for the allowance of $6 weekly excess advance-ment from July 24, to October 8, amounting to $60, October 8 being the date on which the $9 payments were discontinued, and July 24 being the date on which the department adjudged that the total loss of use of the arm ceased, and the $3 payments as for one-third loss of use of the arm commenced. What movants insist on is, that, in view of the adjudication that the total loss of use of the arm ceased on July 24, they should be recompensed for having made payments as for such total loss of use prior to that date, even though such total loss of use did then in fact exist, and was so adjudicated. Their position seems to be that, because their payments became lessened by virtue of the adjudication that what once amounted to a total lack of use of the arm had become only a partial lack of use, even the payments made while lack of use was in fact total, and so declared, should be scaled down and ad-justed to the level of the subsequent payments as for partial lack of use. This contention was embodied in the original brief of counsel in the following language: "The Department of Indus-trial Relations found that the employee had sustained only a $33\frac{1}{3}\%$ loss of use of his arm; and so, excluding compensation for ten-weeks total disability, the employee would be entitled to $33\frac{1}{3}\%$ of the maximum amount of $9, as allowed under section 30; that is to say, on such a finding he would be entitled to $3 per week for a period of 200 weeks, less any payments made subject to credit in the meantime. In order that the court may have the figures which will result from an application of the ruling made in the Clay case to the facts in this case, we submit the following calculations:

"Weekly wages of employee, $18 maximum amount allowed under section 30 for temporary total disability, $9 maximum amount allowed for $33\frac{1}{3}\%$ partial loss of use of arm, $\frac{1}{3}$ of $9; or $3.00 per week for a period of 200 weeks, $600 less compensation paid from May 1, 1934 (beginning at the expiration of 10 weeks covering temporary total disability), to October 8, 1934, 23 weeks

at $9 per week, $207 leaving balance of compensation which could be awarded, $393."

In their motion for rehearing they now again insist "that the court has overlooked the second portion of the opinion in the *Clay* case [180 *Ga*. 294, supra], and has overlooked the fact that plaintiffs in error are entitled to have this court give force and effect to the second portion of the Supreme Court's decision, and also allow them credit for $72 [in addition to the $60 already provided for], the excess of $6 per week which was paid the claimant between May 1, 1934 and July 24, 1934, a period of 12 weeks." In other words, counsel endeavor to get this court to hold in·effect that, upon a finding by the Department of Industrial Relations of a changed and improved condition of an injured employee, the department should not content itself with setting up and establishing a new and reduced benefit for the *remainder* of the unpaid weekly benefits, but should go further and make such reduced payments *retroactive* so as to cover the entire period of disability. Their contention is that this should be done, despite the fact that the payments were made in accordance with the solemn adjudication, as to a stated period of total disability which, unless and until set aside remains effective and binding, and despite the additional fact that the section of the act providing for additional hearings as to any subsequent change in condition expressly stipulates that no subsequent review should affect the previous award as regards any moneys paid thereunder. This question has already been adjudicated in principle by this court as far back as *South* v. *Indemnity Insurance Co.*, 39 *Ga. App.* 47 (146 S. E. 45). In *Home Accident Insurance Co.* v. *McNair*, 173 *Ga*. 566, 570 (161 S. E. 131), the Supreme Court expressly approved this ruling as made in the *South* case, in the following language: "It is not the purpose of section 45 of this act to abolish entirely the doctrine of res adjudicata; but it was intended to relieve the parties from this doctrine in the particular instances named therein. The ruling of the Court of Appeals in *South* v. *Indemnity Insurance Co.*, supra, states the true applicable principle of law." This ruling as made in the *McNair* case was approved and followed by the Supreme Court in *General Accident &c. Assurance Cor.* v. *Beatty*, 174 *Ga*. 314 (162 S. E. 66), wherein it was held as follows: "On review, the industrial commission can not make a retroactive award to be

effective as of the date of the original award, and can not treat monies paid under the original award as compensating the employee for compensation awarded to him on review, upon the theory that the compensation received under the original award was sufficient to pay the compensation which would be due the employee for a permanent partial loss of capacity from the date of the original award to the date of the rendition of the award on review." It is true that in the instant case, owing to a delayed adjudication by the department, the award as finally made adjudicated the fact of total disuse of the member and the period thereof, and the fact of subsequent partial disuse and the period thereof, all in one and the same judgment, instead of, as in the *South* case, altering the original judgment of total disuse by a subsequent judgment setting up an improved condition. We do not think, however, that because of such deferred and delayed adjudication the plaintiff should be deprived of what the department has solemnly adjudged to be his due, because in another portion of the judgment it is held that such total disuse ceased on a named date, and that after such date the claimant was entitled to payments as for only a reduced and partial disuse of his arm. In other words, we think that the principle announced in the *South* case would protect the claimant in this case just as completely as if there had been two judgments, the original judgment setting up total disuse and the subsequent judgment a reduced or partial disuse. In neither form of precedure should the claimant be deprived of that to which the department has solemnly adjudicated that he was entitled. It might not be amiss to quote here the syllabus in the *South* case. It was there held: "Under section 45 of the workmen's compensation act, on application of any party at interest 'on the ground of a change in condition, the industrial commission may at any time review any award or any settlement made between the parties and filed with the commission, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded.' Upon an application for such review, the essentials leading up to the award are to be taken as res judicata, but the physical condition of the employee remains open to inquiry. *Gravitt* v. *Georgia Casualty Co.,* 158 *Ga.* 613 (123 S. E. 897); *Globe Indemnity Co.* v. *Lankford,* 35 *Ga. App.* 599 (134 S. E. 357); Workmen's Compensation Acts, C. J. Appendix; 40 Cyc. 131, 132; L. R. A. 1916A, 163, 164.

Thus, where the evidence before the industrial commission upon such review authorizes a finding that there has been a change in the condition of the claimant, a new award of compensation, based upon such changed condition, may be entered, although the original award may have been based upon a disability found by the commission, at the time of making such original award, to be permanent. . . However, under section 45 of the workmen's compensation act, no review by the commission of an award of compensation previously made 'shall effect such award as regards any monies paid.' Accordingly, while the commission may, upon reviewing an award previously made, make a new award 'ending, diminishing, or increasing the compensation previously awarded,' such an award can not be made retroactive so as to be made effective as of the date of the original award, since to do so would 'affect the award previously made as regards' monies paid, but the new award can only become effective as of the time it is entered, and the claimant can not be required to account for monies already paid him under the previous award. . . Under the foregoing rulings, when the industrial commission found on review that the condition of the claimant in the instant case had changed, he was subsequently entitled only to compensation as for a permanent partial loss, instead of as for a permanent total loss, of the use of the injured member. But the commission was not authorized to impair its previous judgment by discontinuing his compensation entirely on the theory that he had already received, as for a total loss of the impaired member, more than he would be entitled to if the new finding had been made to begin with. He could not thus be required to account for monies already legally paid under the previous award; and the commission should have entered a new award allowing him subsequent diminished compensation for the continuing permanent partial loss of the use of such member in the proportion that such partial loss bears to such total loss."

With reference to the case of *Liberty Mutual Insurance Co.* v. *Clay*, 180 *Ga.* 294 (supra), now relied on by movants, we are unable to see any relevancy to the question now at issue. In the *instant* case the employee was earning $18 a week. The finding of the department was that there was a total loss of the use of claimant's arm for 12 weeks, for which period one half of his weekly wage ($9) was allowed. It was further adjudicated that there was there-

598

·after only a one third partial loss of the use of the arm, beginning July 24, for which period a weekly benefit of $3 for the remainder of the designated period was allowed. No attack is made on the correctness of this final award, except that the minimum award should have been made to relate to the date of the injury, so that the reduced weekly payments would obtain *throughout the entire term*—that is, both for the period while there is a binding adjudication that a total loss of use of the arm existed, as well as for the period covered by the adjudication as to a one-third loss of its use. In the *Clay* case it was held that the employer would be entitled to a credit for "the amount of any payments made subject to credit in the meantime." And so would the employer be entitled in this case if any overpayments were made subject to credit pending a final award. The only advancements which, subject to the approval of the department, could be taken as in excess of the award as made, were those amounting to $60, and these have been specifically pro-vided for in the original opinion. *Rehearing denied.*