28834. RODDY *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY *et al.*

DECIDED MAY 21, 1941. ADHERED TO AN REHEARING, JULY 31, 1941.

*Clarence Kolwyck, Fraser, Irwin & Latimer,* for plaintiff.
*Neely, Marshall & Greene,* for defendants.

GARDNER, J. A. F. Roddy excepts to the judgment of the superior court sustaining the ruling of the Industrial Board in dismissing his claim against the American Credit Indemnity Company and the Hartford Accident and Indemnity Company for certain alleged injuries. By agreement of counsel for both sides the following evidence was stipulated: "On March 24, 1934, A. F. Roddy was in the employment of the American Credit Indemnity Company under a contract of employment; . . that at that time the American Credit Indemnity Company was operating under the provisions of the Georgia workmen's compensation act, and that it was insured under that act by the Hartford Accident and Indemnity Company, and that the employer had notice of this accident sustained by Mr. Roddy within thirty days of the occurrence; . . that if Dr. J. P. Haskin and Dr. O. G. Hughes were present that they would testify that the claimant had partial loss of use of his leg as the result of the accident which they estimate to be between ten and fifteen per cent. .. . The accident was in Whitfield County." On March 20, 1935, Roddy, through his attorney, made a claim for compensation with the Industrial Board, and added the following paragraph: "I desire that the

hearing on this claim be postponed upon the outcome of my common-law suit now pending or any that may be filed." Ignoring this request, on March 21, the Industrial Board notified the claimant's attorney that a hearing would be held on the case on the next schedule held in the northwestern part of the State. Counsel for claimant replied in part as follows: "If you will refer to the last paragraph of the notice you will note that we do not want this case set for hearing at the present time." On March 26, 1935, the Industrial Board advised counsel and claimant that the case would not be docketed for hearing until the court had disposed of the common-law suit. Then, in December, 1939, counsel and claimant notified the Industrial Board that a hearing in the case was desired. In a hearing held February 14, 1940, before the single director, upon written notice by the employer and the insurance carrier, the director dismissed the claim upon the ground that it had not been filed with the Industrial Board within twelve months from the accident. This award was affirmed by the full board, and, upon appeal, by the superior court.

This case is brought before the Court of Appeals on the question whether the statute of limitations had run as provided by Code, § 114-305. The claim was denied on the ground that it was not filed with the Industrial Board within the twelve-month period allowed from the date of the accident. This court held in *Bituminous Casualty Corporation* v. *Mallory*, 63 *Ga. App.* 714 (12 S. E. 2d, 112): "The Georgia compensation act does not require any technical or formal filing of a claim." In the instant case, as in the *Mallory* case, supra, the record does not disclose that the attorney or the defendant or any person representing the Industrial Board did or said anything that amounted to "an interference with the usual course of legal procedure." Nor does it appear that any objection was raised during the time between the filing of the claim on March 20, 1935, until December, 1939, when the claimant notified the Industrial Board that a hearing in this case was desired. In fact, a hearing was held on February 14, 1940, before the single director, whose decision was later confirmed by the full board. It is the opinion of this court that the ruling in the *Mallory* case is controlling, and is not contrary to the findings in *Jordan* v. *Bosworth,* 123 *Ga.* 879 (51 S. E. 755), and *Foster* v. *First National Bank of Atlanta,* 56 *Ga. App.* 880 (194 S. E. 225). In the *Jordan*

case the court held: "Handing to the clerk a petition, with instructions to indorse upon it an entry of filing and to issue process, but 'to hold it' until the plaintiff notifies him further, is not a filing of a suit or the commencement of an action, *within the meaning of the Civil Code, § 4973 [81-112]*, until the instructions are withdrawn; and if the bar of the statute of limitations attaches before the instructions are withdrawn, the suit is barred notwithstanding service was regularly perfected after the withdrawal of the instructions." (Italics ours.) In the *Foster* case, supra, page 881, the court held: "After the claimant had filed the claim with the department on July 9, 1935 [the accident occurring July 17, 1934], at his own request and direction the claim was withheld from the employer until January 3, 1936, which was more than a year after the date of the accident," and was consequently barred under the provisions of Code, § 114-305. In the instant case, the usual course of legal procedure was in essence regular, notwithstanding final hearing and decision were delayed more than twelve months, the bar of the statute. Code, § 114-305. The filing of the claim was regular and legal, and within the time allowed by this section. No subsequent action voided this act.

We come next to determine the amount of compensation which the claimant is entitled to recover. On this point the director held: "The evidence in this case having shown that claimant was confined to bed from the date of the accident to about June 1, 1934, and that thereafter he was only able to hobble about on crutches with his leg in a cast up to approximately November 1, 1934, and that after the cast was removed he was still unable to use the leg sufficiently to return to his regular work until December 7, 1934, claimant during this entire period was suffering a total loss of use of his left leg, and is therefore entitled to compensation at the rate of $15 per week for the total loss of use of his left leg during this period of 35 5/6 weeks, or the total sum of $537.50. The evidence having shown that at the expiration of this period claimant's condition had changed to such an extent that he was able to return to work; and that he thereafter suffered a fifteen per cent. permanent partial loss of use of his left leg, he is entitled to compensation from and including December 8, 1934, at the rate of $2.25 per week for a period of 139 1/6 weeks or a total of $313.13, making a total of $850.63 payable to the claimant as com-

pensation for his injury. Although sections 114-404 and 114-405 provide for compensation on the basis of a decrease in earnings, section 114-406 provides compensation for the loss, or loss of use, of a member irrespective of the earning ability of a claimant after an accident is sustained. In other words, had the claimant in this case sustained a total loss of his left leg, and within ten weeks after the injury occurred had been able to return to his regular job at an increase in his earnings, he would still be entitled to compensation for the total loss of his leg."

The facts in the case of *Castle* v. *Imperial Laundry and Dry Cleaning Co.,* 62 *Ga. App.* 184 (8 S. E. 2d, 547), are distinguishable from the facts of this case. In the *Castle* case, this court held: "The injury did not come within the schedule of injuries in § 114-406; for the injury was not the 'loss of a hand,' but was an injury to the hand which was cured within ten days after he returned to work." Further, it was held that if the claimant was entitled to compensation at all it would be under either Code, § 114-404, covering total disability, or Code, § 114-405, covering partial disability, for loss of earning capacity; but since he earned the wages, he was not entitled to compensation under those sections, and since there was no permanent injury to or loss of use of his hand to any extent.

We think that the law of compensation under the workmen's compensation act as applied to the facts in this case is correctly stated by the director. Therefore, since we have held that the case was properly filed and was in order for final disposition on the merits thereof, we hold that the claimant is entitled to receive the total sum of $850.63. The judgment of the superior court affirming the finding of the director approved by the Industrial Board is reversed with direction that the claimant be allowed compensation in the amount above stated.

*Judgment reversed, with direction. Broyles, C. J., and MacIntyre, J., concur.*

### ON REHEARING.

GARDNER, J. Movants insist that the question for determination is whether Roddy should be entitled to recover compensation from March 24, 1934, to December 7, 1934, as for the temporary (total) loss of use of his leg even though during this time he received his wages; and that when the court holds as a matter of

law that Roddy is entitled to recover compensation for the functional loss of use of his leg for this period of time, 35 5/6 weeks, at the rate of $15 per week, the court overlooked the fact that the evidence conclusively showed that during this period Roddy was able to work and earn his regular wage. The evidence demands a finding, as a matter of law that Roddy was unable during the 35 5/6 weeks to go about his work and thereby earn his regular weekly wages, but that, confined at home, he did receive his regular weekly wages by reason of the co-operation and assistance of his employer in putting other employees in his territory to work under his direction and secure business in his stead and on his behalf, from which he received the commissions or "wages" additionally to those he was able to "earn" by telephone while confined because of the injuries. Accordingly, the Industrial Board found that Roddy during the 35 5/6 weeks suffered a total loss of use of his left leg; that his earnings were "approximately the same as prior to the accident;" and that after this period of weeks he sustained a permanent, partial industrial handicap of 15 per cent. The evidence sustained these findings.

The Industrial Board, however, further found that, at $15 per week, Roddy was entitled to this rate for the 35 5/6 weeks, and at $2.25 per week he was entitled to this rate for a remaining period of 139 1/6 weeks,—the two periods resulting in a total of 175 weeks. We determine now whether these findings were correct.

Movants contend in effect that whatever may be the right of Roddy to compensation for the permanent, partial industrial handicap of 15 per cent. for the number of weeks provided by the statute, he received his wages during the 35 5/6 weeks and was not entitled to "compensation as for the temporary total loss of his member [leg] (during the healing period and before maximum improvement had been reached)." Movants say that the "language of Code section 114-406 and the history of the amendments to that section, will disclose that the legislature there was dealing only with 'permanent, partial industrial handicap,' and that it was never the intention of the legislature to compensate an employee for the temporary loss of use of his leg during that time he was working and earning his regular wage."

The Code, § 114-406, provides for compensation for "permanent partial industrial handicap" in the loss of certain members of the

body; compensation is provided for "permanent partial industrial handicap" in the "loss of a leg, 50 per centum of average weekly wages during 175 weeks." But under this section, the total loss of the *use* of a leg is equivalent to the loss of a leg. *Travelers Insurance Co.* v. *Reid,* 49 *Ga. App.* 317 (175 S. E. 414); *Liberty Mutual Insurance Co.* v. *Clay,* 180 *Ga.* 294, 297 (178 S. E. 736). Therefore, for "permanent partial industrial handicap" in the total loss of the *use* of a leg "50 per centum of average weekly wages during 175 weeks" shall be paid. *In addition* to this period of 175 weeks, this section also provides: "In addition to the compensation provided in the schedule for permanent partial handicap, compensation for total incapacity for work, as provided in section 114-404, shall be paid, but compensation for total incapacity for work shall in no case be paid for a period longer than 10 weeks." The section therefore provides for two separable, distinct periods of compensation, but differently characterized. The first is considered as a healing period (*Maryland Casualty Co.* v. *Smith,* 44 *Ga. App.* 840, 844, 163 S. E. 247; *Continental Casualty Co.* v. *Haynie,* 182 *Ga.* 608 (2), 186 S. E. 683) and compensation must be as for "total incapacity for work, as provided in section 114-404," even though *basically* the injury is that of partial industrial handicap. The second period is grounded alone on permanent partial industrial handicap in the total or partial loss, or loss of the use of, certain specified members of the body, for which the Code, § 114-406, provides compensation specifically, and exclusively of all other compensation. *Travelers Insurance Co.* v. *Reid,* 49 *Ga. App.* 317, 320 (175 S. E. 414). The first, or healing, period (whether full ten weeks or less) is not deductible from, but is in addition to, the second or industrial handicap period (*Liberty Mutual Insurance Co.* v. *Clay,* supra), and is compensable as above indicated without regard to the question whether the injury giving rise to the industrial handicap is the *total* or the *partial* loss of the use of the member. *South* v. *Indemnity Insurance Co.,* 39 *Ga. App.* 47 (145 S. E. 45); *Liberty Mutual Insurance Co.* v. *Clay,* supra. Beyond the first period, compensation as for "total incapacity for work," predicated on an injury giving rise to permanent partial industrial handicap is not extended; the character of the compensation then changes and becomes that specifically provided (*Georgia Casualty Co.* v. *Jones,* 156 *Ga.* 664, 119 S. E. 721) *for the handicap. Trav-*

*elers Insurance Co.* v. *Reid,* and *Maryland Casualty Co.* v. *Smith,* supra. During the second period, if the loss of the use is total and constant, or partial and constant, compensation for the full period must be made accordingly (*South* v. *Indemnity Ins. Co.,* supra (1)), but if varying, then according to the actual condition of the injured member to be determined from time to time by the Industrial Board (*Liberty Mutual Insurance Co.* v. *Clay,* supra; *Continental Casualty Co.* v. *Haynie,* supra), but "An award should not be withheld for the purpose of adjusting the compensation on the basis of the condition of such member after maximum improvement has been reached." *Liberty Mutual Insurance Co.* v. *Clay* and *Travelers Insurance Co.* v. *Reid,* supra.

In the instant case the Industrial Board erred in determining compensation for only 175 weeks, but under the foregoing principles should have applied compensation over a 10 weeks healing period and over a 175 weeks handicap period. The evidence required a finding that the employee sustained a total loss of the use of the leg for 35 5/6 weeks. Over the first 10 weeks compensation must be made as for "total incapacity for work;" the evidence required a finding that the employee was entitled to 10 weeks at $15 per week, or $150. Over the remaining 25 5/6 weeks compensation must be made as for permanent partial industrial handicap in the total loss of the use of the leg; the evidence required a finding that the employee was entitled to 25 5/6 weeks at $15 per week, or $387.50. Deducting 25 5/6 weeks from 175 weeks as the full period of industrial handicap, over the remaining 149 1/6 weeks the employee was entitled to compensation on a 15 per cent. basis as loss of the use of the leg, at $2.25 per week, or $335.62. Accordingly, the award should be in the total of $873.12 less $22.50 representing that sum which arose for the 10 weeks which the Industrial Board failed to apply, since no exceptions are made thereto by the plaintiff in error; leaving the award correctly to remain in the sum as found by the board, in the amount of $850.63.

But the employee for 35 5/6 weeks received his regular wages, by his partial ability to work by telephone and through the assistance of the employer as above indicated. Movants raise two questions: (1) Is the employee entitled to "compensation as for temporary total loss [of the use] of his member during the healing period and before maximum improvement has been reached?" Un-

der the principles already discussed, whether the period in question is the healing period or the industrial handicap period, the answer is in the affirmative. (2) Does the receipt of the regular wages over the 10 weeks healing period and over the 25 5/6 weeks within the industrial handicap period, defeat recovery for those weeks when he was sustaining a "temporary [total] loss of the use of his leg during that time he was working and earning his regular wage?" As to the not over 10 weeks healing period, compensation on the basis provided is mandatory, without reference to the total or partial loss of use of the leg, and without reference to the full or partial ability to earn wages. This period is basically grounded on injury giving rise to industrial handicap, and though compensable as for total incapacity for work, as provided by the Code, § 114-404, it is in no way grounded on injuries characterized by Code, § 114-404, as producing total incapacity for work. As to the succeeding period of 25 5/6 weeks, running as part of the full 175 weeks compensable period, the total loss of the use of the leg for a number of *weeks less* than the full period in no way prevents such total loss of the use of the leg from being "permanent partial industrial handicap" within Code, § 114-406. Compensation is specifically for the permanent partial industrial handicap, *as such* (*Georgia Casualty Co.* v. *Jones,* supra), without regard to earnings in a greater or less degree than those at the time of the accident or whether earned from the same or other employers.

*Castle* v. *Imperial Laundry & Dry-Cleaning Co., 62 Ga. App.* 184 (8 S. E. 2d, 547), is not authority to the contrary of the rulings herein made. Castle received an injury to his hand which totally incapacitated him for a period of two weeks and partially incapacitated him for a period of two weeks. At the end of the first two weeks he returned to work and his hand became cured within ten days. The court held that *"the injury did not come within the schedule of injuries in § 114-406* [italics ours] ; for the injury was not the 'loss of a hand,' but was an injury to the hand which was cured within ten days after he returned to work." During the first two weeks of total incapacity to work Castle was paid his regular wages. The court said further: "During the period of so-called 'partial incapacity' which sometimes follows a 'total incapacity' defined in § 114-404 . . the claimant . . received [his regular wages], "and this court has held: 'Except as

specifically provided in section 32 of the act [Code, § 114-406], such partial incapacity terminates when the employee again becomes capable of earning the same wage he earned before his injury.'"

It is clear that the injury Castle received, though to a member scheduled in Code, § 114-406, was not such as, during the statutory healing period of not over ten weeks, to give rise to a permanent partial industrial handicap either in the loss of, or the loss of the use of, such member. It is equally clear that the court was treating the injury only as that arising within the purview of and requiring compensation *directly under the* Code, §§ 114-404, 114-405. The loss of the hand would have instantly determined the injury to be that as for permanent partial industrial handicap. The total loss of the use of the hand may, or may not, classify the injury as that of permanent partial industrial handicap; it must become determined whether the injury inherently produces such handicap. It is obvious that Castle was not sustaining any "permanent partial industrial handicap." Accordingly, the fact that Castle received his regular wages over the two two-week periods, for an injury sustained in effect within the purview of Code, §§ 114-404 and 114-405, has no legal bearing upon the question in the instant case, whether the employee is barred, for the period of 35 5/6 weeks, from recovery of compensation under Code, § 114-406, because he earned and received his regular wages. The rule is not altered by the fact that part of the 35 5/6 weeks comprised the full statutory healing period, when during this period the injury was such as gave rise inherently to permanent partial industrial handicap.

The judgment in the case is hereby made to conform to the opinion now rendered on rehearing, and the superior court is hereby directed to remand the case to the Industrial Board with direction that it enter its award to conform to the judgment of this court, to wit: 10 weeks (healing period) at $15 per week, or $150; 25 5/6 weeks at $15 per week, or $387.50; and 149 1/6 weeks at $2.25 per week, or $335.63; or an aggregate of $873.12 less $22.50 deductible for reasons already indicated, or the final sum of $850.63 as the definite amount of the award.

*Judgment of reversal, as modified, adhered to, with direction. Broyles, C. J., and MacIntyre, J., concur.*