30748, 30749. HARDWARE MUTUAL CASUALTY CO. *et al. v.* WILSON; and *vice versa.*

DECIDED MAY 29, 1945. REHEARING DENIED JUNE 21, 1945.

*Neely, Marshall & Greene,* for plaintiffs in error.

*Paul T. Chance,* contra.

PARKER, J. These are workmen's compensation cases. D. W. Wilson, an employee of a garage, while earning $30 per week, was injured by receiving severe burns on his right arm, neck, and chest, on September 8, 1942, in an accident arising out of and in the course of the employment. An agreement to pay compensation of $15 a week during temporary total disability, as provided by the Code, § 114-404, was entered into between the parties and was filed with and approved by the workmen's compensation board, and the claimant was paid for a period of 13 weeks, from September 15 through December 15, 1942.

On December 15, 1942, the claimant went back to work for the garage at wages equal to or greater than the amount he was receiving at the time of his injuries, and later on he worked at the arsenal in Augusta, Georgia, at wages greatly in excess of those he was receiving when he was injured. While employed at the arsenal he filed a claim for bodily injuries resulting from his accident, and requested a hearing to determine liability and compensation. On May 16, 1943, the director hearing the claim made an award denying compensation because of the increased earnings of the claimant, holding in effect that the claimant could not recover for bodily injuries producing a partial disability so long as his earnings were equal to or greater than his earnings at the time of the accident. This award was appealed to the full board by the claimant, one ground of the appeal alleging that the claimant had sustained a permanent loss of at least 50% of the use of his right arm, for which he was entitled to compensation without regard to other contentions or claims. At the hearing on the appeal the claimant moved that the case be remanded to the director for the purpose of taking additional medical testimony regarding his physical condition, and the motion was granted and the case remanded as requested. A further hearing was had on October 29, 1943, and on November 12, 1943, the board made an award directing the payment of compensation to the claimant at the rate of $15 per week for a period of 100 weeks. There was no appeal from this award and it was paid in full in a lump-sum settlement.

On July 12, 1944, on application of the claimant, a hearing was had "to determine change in condition, and whether claimant is

entitled to expenses incident to surgical treatment and hospitalization, and whether such would be beneficial to claimant." Among the findings of fact made by the director, in an award dated August 9, 1944, were that the claimant operated a garage for himself from November 26, 1943, to May 12, 1944, earning $11 per week during that period; and that subsequent to May 12, 1944, and up to the time of the hearing he had no regular employment, but did various jobs around garages and earned $7.50 a week. Further findings of fact were as follows: "That the claimant would be entitled to receive compensation for a partial loss of earning capacity beginning on November 26, 1943, and not to exceed three hundred weeks from the date of the accident, which was September 8, 1942, . . that the claimant averaged $11 a week beginning as of November 26; 1943, until May 12, 1944, or a total of twenty-four weeks. For this period he is entitled to $9.50 per week, which amount is half the difference between the sum he was able to earn at the time he was injured and during the period for which he is being paid compensation. The claimant is also entitled to recover compensation beginning May 12, 1944, at the rate of $11.25 per week, this amount being half the difference between the amount of $7.50 per week, which he has been earning since May 12, 1944, and the amount of $30 a week he was earning at the time of the original injury. The accident occurred on September 8, 1942, and through May 12, 1944, a total of eighty-seven and one-half weeks elapsed. In addition to this eighty-seven and one-half weeks the employer is entitled to take credit for one hundred weeks which were paid for fifty per cent. disability to the arm. Therefore, beginning as of May 12, 1944, the claimant is entitled to receive compensation at the rate of $11.25 per week for a total of one hundred twelve and one-half weeks, or until there is a change in condition, at which time either party may apply for a hearing to have the matter determined." The award was as follows: "The employer and/or the carrier in this case will pay compensation to the claimant at the rate of $9.50 per week beginning as of November 26, 1943, up and through May 12, 1944, or a total of twenty-four weeks. Beginning as of May 12, 1944, the employer will pay to the claimant compensation at the rate of $11.25 per week not to exceed a total of one hundred twelve and one-half weeks, or until there is a change in condition."

On appeal by all of the parties to the board the award of the director was affirmed in its entirety on August 29, 1944. On appeal to the superior court by all of the parties the award was affirmed, and the two cases here present exceptions to that judgment. Regardless of whether these cases constitute a main bill and a cross-bill of exceptions, or present two separate bills, they will be treated together, as only one decision is necessary to dispose of both. The employer and the insurer contend that since the claimant had received compensation at the total-disability rate from the date of his injury to December 15, 1942, and since it had been adjudicated that he had no disability between December 15, 1942, and November 12, 1943, and that during this period his earnings were in excess of his earnings at the time of the accident; and since he had been paid compensation at the maximum rate of $15 per week from November 12, 1943, to October 28, 1945, the one-hundred-week period, the board was without power or authority to hear the case in July, 1944, and make the award complained of. The employer and the insurer contend that the action of the board required them to pay the claimant total compensation greater than that provided for in the law. The claimant contends that the award was erroneous and contrary to law because the employer and the insurer were given credit for a total of 63½ weeks (87½ less 24), which elapsed between the date of the accident on September 8, 1942, and November 26, 1943, and was given credit for the 100 weeks which were paid for 50% disability to the arm, as against a maximum of 300 weeks (from the date of the accident) for which the claimant could receive compensation. It will be noted from the findings of fact and the award by the director, which were affirmed by the board and by the superior court, that the director did not arrive at the deduction of 63½ weeks from the 300-week period directly, but made a deduction of 87½ weeks from the date of the injury to a date when the claimant's average income decreased slightly (May 12, 1944), and then added back a period of 24 weeks, which elapsed between the date (November 26, 1943) upon which it was found that the partial loss of earning capacity began and the May 12, 1944 date. Apparently the computation was made in this way to make easier the deduction of the 100 weeks from the end of the 300-week period, but the net result,

as already shown, was to deduct the period of 63½ weeks elapsing from the date of the injury to the date the partial loss of earning capacity was found to have begun. Thus a period of 163½ weeks was deducted from the 300-week period allowed by the statute for the partial loss of earning capacity.

The Code, § 114-404, provides compensation, during a period not greater than 350 weeks, and for not more than $7000, for *total incapacity* to work resulting from an injury. Section 114-405 provides compensation, during incapacity for a period not greater than 300 weeks from the date of the accident, and for not more than $5000, for *partial incapacity* to work. Section 114-406 provides compensation, during varying periods and in different amounts as specified, for *permanent partial industrial handicaps,* in lieu of all other compensation for permanent partial industrial handicaps; and in addition, compensation for total incapacity to work, under § 114-404, for not longer than 10 weeks. Section 114-709 provides that "on the ground of a change in condition" the board may review any award or settlement, and may end, diminish, or increase compensation previously awarded within maximum and minimum amounts specified, but no such review shall affect moneys paid.

The compensation of $15 a week during temporary total disability, which was paid for 13 weeks immediately following the accident, by agreement of the parties, was under § 114-404. The award of November 12, 1943, for a permanent partial industrial handicap in the loss of at least 50% of the use of the right arm (which was paid in a lump-sum settlement) was under § 114-406. The award of August 9, 1944, by the director, which was affirmed by the board on August 29, 1944, to which all of the parties have excepted, was for a partial incapacity to work under § 114-405, although it came about by reason of a review based on a claim of a change in condition as provided by § 114-709. This award took into account the 100 weeks covered by the award of November 12, 1943, and also 63½ weeks covered by the time the claimant was paid for temporary total disability and the time during which his wages were equal to or more than his wages when he was injured. The employer and the insurance carrier were given credit, so to speak, for 163½ weeks as against 300 weeks from the date of the

accident, the maximum period for payment of compensation for partial incapacity to work under § 114-405.

We are of the opinion that the award under review is correct. The employer and the insurer contend that the award has the effect of being to some extent concurrent with the award of compensation for 100 weeks for 50% loss of the use of the arm, and that for the weeks that the two awards overlap the claimant would receive total payments, computing the first award as if payments had been made by the week rather than in a lump sum, in excess of the maximum allowed by the law. Their counsel concede that the question they present does not appear to have been specifically decided by our courts; but they cite decisions of other jurisdictions and quote from textbooks to the effect that the awards should be consecutive. After all, the effect of the award under review was to make the awards consecutive rather than concurrent. The director could not deduct the moneys paid under the previous award with respect to the arm, nor call upon the claimant to account for the moneys. Code, § 114-709; *Helms* v. *Continental Casualty Co.,* 50 *Ga. App.* 267 (177 S. E. 915); *London Guarantee &c. Co.* v. *Ritchey,* 53 *Ga. App.* 628 (186 S. E. 863), and cit. But we think credit could be given the employer and the insurer for the 100 weeks for which payment was made on account of the arm as against the 300 weeks allowable for the partial disability under the proceeding based upon a change in condition. *Helms* v. *Continental Casualty Co.,* supra (page 272); *City of Hapeville* v. *Preston,* 67 *Ga. App.* 350, 354 (20 S. E. 2d, 202). Such credit had the effect of making benefits under the last award follow benefits paid under the first award. Upon similar reasoning we think credit for the 63½ weeks was also properly allowed.

The claimant contends that it was error to allow the credits in the award under review; that the benefits provided by the Code, § 114-406, are separate and independent of all other benefits afforded under the compensation law, and that benefits allowed under that section should in no case be deducted from benefits later allowed under § 114-405, upon a change of condition as provided by § 114-709, and he cites *Roddy* v. *Hartford Accident &c. Co.,* 65 *Ga. App.* 632 (16 S. E. 2d, 81). In that case no such issue was presented as is here under consideration. There the benefits in-

580

volved were the relation to each other of temporary total incapacity, such as is provided under § 114-404, and permanent partial industrial handicap, as both are provided for under § 114-406, and there was no proceeding based on a change of condition in that case; whereas, in the instant cases we have the relation to each other of a partial incapacity to work under § 114-405, and a permanent partial industrial handicap under § 114-406. So the language of the *Roddy* case intimating that the benefits under § 114-406 are provided irrespective of the earning ability of a claimant after an accident is sustained is not applicable to the cases presented now, so as to make the award under § 114-406 independent of and in addition to the later award under § 114-405. If the claimant had made no further move to obtain other compensation benefits, his capacity to earn would not have had any bearing upon his right to continue to receive benefits under § 114-406, and the principle announced in the *Roddy* case would have been applicable. But the claimant did not rely further on the benefits of § 114-406, after he had been paid in full therefor in a lump sum, but he moved to have his award reviewed because of his alleged *change in condition*. He necessarily asserted that his condition had changed from that of merely possessing an industrial handicap under § 114-406 to a condition of being partially incapacitated for work. He was favored by having an award made declaring that his condition had changed; and he can not now be heard to complain of the effect such a finding has, which is that, from the date the change was found to have taken place (November 26, 1943), his benefits would be those established by § 114-405 instead of those under § 114-406, rather than being in addition to the benefits of § 114-406. But, as already stated, since no account could be had of the *moneys paid* under the prior award, the adjustment was properly made by deducting the number of weeks thereunder from the maximum time permitted under the section authorizing the later award. The claimant argues that the Code, § 114-405, permits the deduction only of the period of total incapacity from the maximum period allowed for partial incapacity, in that one sentence of the section reads: "In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period herein allowed for partial incapacity." This provision does not expressly, nor by implication, provide that such a

deductible period is the only one deductible. Certainly the intervening period in which the claimant was not disabled, either totally or partially, is deductible, for the maximum period runs from the date of the injury. Upon the same reasoning the period represented by the award paid in a lump-sum settlement should be deducted. If the claimant had not been paid beyond the date of the change in condition, the change in monetary benefits could be made as of that date; but since payment had been made beyond that time, and since the law provides that moneys paid are not taken into account, the adjustment is made by the plan of deducting the weeks represented by the payments made.

There is evidence to support the findings and the award of the board of workmen's compensation, and the court did not err in affirming the award on appeal.

Pursuant to the act of the General Assembly, approved March 8, 1945, requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgments affirmed. All the judges concur, except*

MacINTYRE and FELTON, JJ., dissenting. The employee was injured on September 8, 1942, and payments of $15 per week were begun on September 15, 1942, for, as provided in the Code, § 114-401, compensation is not payable until after the elapse of seven days from the date of the injury. This compensation, begun on September 15, 1942, was due under the provisions of the Code, § 114-404, which covers total incapacity to work. These payments were continued until December 15, 1942 (a period of 13 weeks), at which time the claimant returned to his job and was paid a salary greater than that which he was receiving at the time of his injury. Shortly after the claimant returned to his job, he filed an application with the board seeking to recover, under a change in condition, for the permanent partial loss of the use of his arm under the Code, § 114-406. However, on a hearing before a director compensation was refused on the ground that since the claimant was earning more since the injury than before he could not recover under § 114-405. Of course this is true, but the claimant could recover under § 114-406, and the board on appeal so found, and entered an award on November 12, 1943, for payments of $15 per week for 100 weeks. In making this award the board

erred in part. The Code, § 114-406, provides that in addition to the payments for the specific loss of members, in whole or in part, only 10 weeks shall be allowed for total disability or incapacity. Since the claimant had received 13 weeks for total incapacity, the board should have deducted these 3 weeks in excess of the 10 allowed under § 114-406, and entered an award of $15 per week for 97 weeks, which would have been correct, since awards under § 114-406 are to be made for permanent partial loss of the use of a member regardless of the claimant's earning capacity and salary, and in making his award the board found a 50% loss of the use of the claimant's arm. Section 114-406 provides that for the permanent partial loss of the use of an arm payments shall be 50 per cent. of the regular weekly wages during 200 weeks (thus in the instant case $7.50 for 200 weeks) ; but, of course, $15 for 100 weeks is the exact equivalent of the Code provision and doubtless of greater benefit to the claimant. However, no question is raised in this case as to the board's authority to increase the payments by shortening the number of weeks, and this will not be passed on here. See, however, *American Mutual Liability Ins. Co.* v. *Braden,* 43 *Ga. App.* 74 (157 S. E. 904) ; *Richardson* v. *Maryland Casualty Co.,* 41 *Ga. App.* 520 (153 S. E. 524). In making this award, clearly the board did not intend that the payments for the permanent partial loss of 50 per cent. use of the claimant's arm should begin on the date of this award, November 12, 1943. It specifically stated that all moneys accrued were to be paid to the claimant at once. Obviously, if the payments were to begin on the date of the award no moneys had accrued. Therefore, we construe it to be the intent of the board that the payments should begin on November 24, 1942, which is the end of the 10-week healing period to which the claimant is entitled under the Code, § 114-406, the section under which this award was made. That this is the correct and customary procedure is clearly indicated by the award made in *Fidelity & Casualty Co.* v. *Leckie,* 52 *Ga. App.* 591 (183 S. E. 642), where the situation there is identical in principle with the instant case, i. e., with regard to the making of an award for permanent partial loss of a member following an earlier award for total incapacity which had been made several months before and payments discontinued. This procedure was

also followed, as indicated by the record, in *Liberty Mutual Ins. Co.* v. *Clay,* 180 *Ga.* 294 (178 S. E. 736).

Subsequently to this award under the Code, § 114-406, the employer made a lump-sum settlement of the award, but two weeks after the award of November 12, 1943, the claimant's capacity to work changed, and on November 26, 1943, he entered an application for an award for partial incapacity to work under § 114-405. On May 12, 1944, the board entered an award for partial incapacity to work in the following amounts: $9.50 per week for 24 weeks (the period from November 26, 1943, on which he had a change in condition to May 12, 1944), and $11.25 per week for 112.5 weeks. The board arrived at these figures by deducting from the 300-week period allowed under § 114-405, a credit of 100 weeks for the permanent partial loss of the arm and 63.5 weeks during which time the claimant was receiving compensation, or was earning more than at the time of the injury. Clearly this award is erroneous. The record shows that from September 15, 1942 (which for purposes of compensation is the date of the injury, not September 8, 1942, as used by the board), until November 26, 1943, the claimant was either receiving compensation or earning in excess of the salary received at the time of the injury, and, of course, in making a later award under § 114-405, this period (62.5 weeks) is deductible, but the board errs when it deducts the full 100 weeks. As stated above if the board had begun the award for the permanent partial loss of 50 per cent. use of the arm on November 24, 1942, as it should have done, then from that date until the claimant's change in condition on November 26, 1943 (a period of 52.5 weeks), the claimant would be entitled to these payments of $15 per week for 52.5 weeks, and the only deduction in weeks which the employer was entitled to make; or to put it another way, the only credit under this award, under § 114-406, which the claimant was due the employer, was the 47.5 weeks of the 100 weeks for which he was overpaid. He would, of course, also have to credit the employer for (or rather the employer would be entitled to deduct) the 3 weeks for which he was overpaid under the award under § 114-404 when the claimant later changed to the award under § 114-406, as indicated above. However, the mere credit of this number of weeks during which he was overpaid will not

584

effect the proper credit to the employer, since the claimant was overpaid 47.5 weeks for the arm, and 3 weeks for total incapacity, or a total of 50.5 weeks at $15 per week, making a total amount of $757.50, and to deduct this number of weeks during which time he will be receiving $11.25 per week gives the employer a credit of only $568.13, or an actual loss of $189.37. Therefore, a sufficient number of weeks at $11.25 must be deducted to amount to $757.50. This number of weeks is 67.3 ($757.50 divided by $11.25). The correct and proper number of weeks to be deducted are: 62.5 weeks during which time the claimant was receiving compensation to which he was legally entitled and 67.3 weeks (50.5 weeks at $15 converted to 67.3 at $11.25) for overpayment for the arm and total incapacity, or a total deduction of 129.8 weeks. Therefore the claimant is entitled, in the absence of a change in condition, under the award of May 12, 1944, to the 24 weeks at $9.50 awarded, and to 146.2 (300 weeks less 129.8 weeks equals 170.2 weeks less 24 weeks equals 146.2 weeks) at $11.25. Another way of stating it is as follows:

300 weeks. Total number of weeks provided in the Code, § 114-405, under which last award was made.

62.5 weeks. Compensation already paid the claimant prior to the last award, leaving 237.5 weeks to be accounted for.

———

237.5 weeks.

50.5 weeks. The employer had also, at the time of the last award, in accordance with the order of the board, not only paid the 50.5 weeks for which the employer should

187 weeks. be entitled to a deduction, leaving 187 weeks to be accounted for,

but

16.8 weeks. the employer was entitled to another deduction to the last award of 16.8 weeks, which he had paid in accordance with the order of the board, thus leaving

———

160.2 weeks. 160.2 weeks to be accounted for.

24 weeks. Under the last award the board having awarded compensation for 24 weeks immediately following thereafter, we deduct 24 weeks leaving 146.2 weeks

———

146.2 weeks. to be accounted for.

The claimant, under our interpretation, thus would receive compensation for the following number of weeks:

62.5 weeks. These two items, amounting to 67.3 weeks at $11.25
50.5 weeks. per week, are the equivalent of 50.5 weeks at $15
16.8 weeks. per week.
24   weeks.
146.2 weeks.

300   weeks.

We think that the board, in the award of May 12, 1944 (the last one), after the expiration of 24 weeks at the rate of $9.50 per week, which immediately followed the date of this award, intended to award compensation at $11.25 per week for the remainder of the 300 weeks, as provided in the Code, § 114-405, for which the claimant had not already received compensation, and that the number of weeks remaining for which compensation was to be paid was erroneously calculated to be 112.5 weeks, when it should have been 146.2 weeks. In order to show the figures which will result from an application of the provisions of the workmen's compensation act, and particularly of the ruling made in *Liberty Mutual Ins. Co.* v. *Clay,* supra, and *Fidelity & Casualty Co.,* supra, we have submitted the above calculations, and under these the claimant is entitled, under the award of May 12, 1944, to 24 weeks at $9.50 per week, which, when paid, would leave a balance of 146.2 weeks at $11.25 per week; provided, of course, that the claimant has undergone no change of condition in the interim.

Another striking reason for our belief that the board did not intend (or if it did so intend it was erroneous) to begin the award on November 12, 1943, for the permanent partial loss of the use of the claimant's arm is, that nowhere in the award does it state that the award should begin on that date, and there is no provision made to pay the claimant for the two weeks between November 12, 1943 (the date of the award), and November 26, 1943, for the permanent partial loss of the use of his arm to which he is unquestionably entitled, as it was not until November 26, 1943, that he showed the change in condition which brought his award under the provisions of the Code, § 114-405.