F. C. SPURGEON, Appellee, v. IOWA & MISSOURI GRANITE WORKS et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Compensa-
1    tion for Permanent Partial Disability.  A permanent partial dis-
ability to a workman's arm, to the extent of one fourth of the full
function of the arm, will be compensated for on the basis of pay-
ments for one fourth of the time during which compensation would
be paid, had the injury been permanent and total.

PRESTON, C. J., and WEAVER, J., dissent.

**MASTER AND SERVANT:** Workmen's Compensation Act—Finding of
2    Fact.  Principle reaffirmed that a finding by the industrial commis-
sioner, on supporting but conflicting testimony, on nonjurisdictional
matters, is conclusive.

*Appeal from Montgomery District Court.*—E. B. WOODRUFF, Judge.

JUNE 22, 1923.

REHEARING DENIED DECEMBER 14, 1923.

PROCEEDINGS upon claim for compensation of employee under the Workmen's Compensation Act.  Plaintiff was a laborer in the employ of James Salter, doing business as the Iowa & Missouri Granite Works, and the casualty association above named is its insurer under the statute.  The question for consideration is stated in the opinion.—*Reversed.*

*Miller, Kelly, Shuttleworth & McManus* and *John F. Hynes,* for appellants.

*Jackson & Jackson* and *J. M. Haddock,* for appellee.

DE GRAFF, J.—The appellee-claimant was employed by the Iowa & Missouri Granite Works and received an injury arising out of and in the course of his employment.  The injury occurred

1. MASTER AND
SERVANT:
Workmen's Com-
pensation Act:
compensation for
permanent par-
tial disability.

March 4, 1921. On April 16, 1921 the appellee and his employer entered into an agreement for settlement as authorized by the Iowa Work-men's Compensation Statute. The written memorandum was duly signed by the parties and filed with and approved by the state industrial commission. The agreement states that the injury arose out of and in the course of the appellee's employment, and that the amount of compensation agreed upon is $15 per week "during the period allowed by law," and acknowledged receipt of the first install-ment for one week to March 26, 1921.

Subsequently to the execution of this writing the insurer paid the claimant ten weekly installments of $15 each, and on May 19, 1921 tendered him the further sum of $22.50 "in full of all further liability" which tender plaintiff refused to accept and thereupon the employer and the insurer refused to make further payment.

On February 14, 1921 the appellants offered to pay appellee compensation at the rate of $15 for 33¾ weeks less the sum of $150 previously paid. This offer was also refused by the claim-ant. On October 14, 1921 plaintiff filed with Hon. A. B. Funk, industrial commissioner, an application setting forth the facts above recited and alleged that the injury for which he was en-titled to compensation resulted in a breaking of his arm in three places whereby he suffered a permanent partial disability reduc-ing or destroying his earning capacity in the same degree as though he had lost the arm. On this basis the plaintiff claimed a recovery at $15 per week for the full period of 225 weeks under the provisions of Section 2477-m9 (j) (19), Code Supple-ment, 1913, and 2477-m9 (j) (13), as amended by Chapter 220 of the Acts of the Thirty-eighth General Assembly. He fur-ther prays a determination of the fact whether his injury is temporary or permanent, but does not question the agreed com-pensation in the sum of $15 per week.

To this application the defendants appeared, admitted mak-ing the memorandum of settlement, but deny that plaintiff sus-tained an injury "partial or total in character and permanent in quality," on the date named or any injury which incapaci-

tated him from earning wages beyond May 14, 1921 or from earning full wages beyond June 4, 1921.

Plaintiff then filed a reply which in substance is a restatement of the matters recited in his application. By stipulation of the parties the questions so put in issue were tried before the industrial commissioner acting through his deputy. The evidence introduced tended to support the opinion of the medical experts that the injured arm shows a permanent partial disability from 25 to 40 per cent. This testimony was given about one year after the injury. The opinion of the surgeon who made an examination of the plaintiff at the request of the insurer on August 8, 1921 is that "the ultimate disability to the arm should not exceed 15 per cent." Upon a second examination in February 1922 this doctor "found very little change since" the one previously made. He concludes with the statement: "In my opinion the man should have been at work before this time and the permanent disability sustained by Mr. Spurgeon does not exceed 15 per cent of the full function of the arm."

We deem it unnecessary to detail in technical terms the character of the injury as testified by the medical men on the hearing before the commission. It appears without dispute that at the time of the injury the claimant had been and was then in the employment of the Granite Works at a weekly wage of $30. His employer testified in reference to the plaintiff's physical condition: "I think Mr. Spurgeon would be worth as much to me in his present condition as he was before the injury. I would pay him the same salary. If I had employment for Mr. Spurgeon, I would be willing to pay him the same wages as I am paying other hands for the same work. I think, after he was injured, I told him to come down, and he could grind tools. I would give him $20 a week for grinding tools."

Upon the showing made the deputy commissioner found and determined that the use of plaintiff's arm had been permanently impaired as the result of said injury to the extent of 25 per cent and ordered that the compensation therefor be fixed at $15 per week for a period of 56¼ weeks beginning at the date of the injury and subject to credit for payments made subsequently to the injury. From this decision or rather from that part thereof which limits the time for which compensation is allowed;

to wit, 56¼ weeks, the plaintiff appealed to the district court. On the submission of the appeal the order of the commissioner was affirmed in so far as it found the plaintiff's injury to be a permanent impairment of the use of his arm to the extent of 25 per cent, but modified the order as to the time to be covered by the compensation and fixed the period at 225 weeks. From this decision the defendants have appealed.

We have to consider, therefore, whether the claimant is entitled to the full period of compensation of 225 weeks. No other question is involved. In determining this question it will be remembered that the parties hereto executed a memorandum of settlement fixing the amount of compensation at $15 per week, but due to the fact that at that time the injury was of recent origin, and the period of disability uncertain and undetermined, it was provided in the agreement that the payment should be continued "during the period provided by law." This period would necessarily be determined by the character of the injury and necessarily depended upon the fact whether the disability was temporary or permanent, total or partial. This was the question left open by the parties and it was the primary question submitted to the industrial commission. This question of fact having been determined under a conflict of testimony by the commissioner there remains but one question or conclusion of law on this appeal.

What is the statutory period provided for compensation for the injury of the character determined by the commissioner?

The Iowa Workmen's Compensation Law is intended to furnish relief to those who are the unfortunate victims of industrial injuries, and such relief is granted when such injury destroys or impairs the capacity to earn wages. The extent of the relief is based on two factors: (a) the average earnings in wages (b) the character of the disability occasioned by the injury. The first factor is constant with a minimum and maximum limit. The second factor depends entirely on the character of the injury and the effect produced on the earning capacity. The law contains a schedule in accordance with which compensation shall be paid. This schedule embraces as far as practicable all injuries which may be suffered, and fixes for certain specified injuries

*2. Master and Servant: Workmen's Compensation Act: finding of fact.*

the periods during which the weekly compensation benefits or payments are to become due to the beneficiaries. It contemplates the various contingencies that may arise: (1) to provide for medical or other services (2) to govern fatalities (3) to govern temporary disability (4) to govern permanent disability, either partial or total.

The different parts of the schedule clearly indicate that the compensation is of the nature of weekly payments, such payments being based on 60 per cent of the average weekly wages and such weekly payments to continue for a specified number of weeks. The period during which the weekly payments are to continue is based solely on the character of the injury. The manifest intent of the law is to furnish the relief by the payment of the weekly compensation when it is most needed. In practice it is found that there are many injuries which affect the earning capacity, but the extent cannot be determined for a considerable time after the injury. To wait until the exact effect is determined before beginning to pay weekly compensation would destroy the intent of the law. Therefore, agreements are made to pay the weekly compensation awaiting subsequent developments to determine the time during which the weekly payments must continue. This is the common practice, and the agreement in the instant case is a very common form of agreement in compensation settlement. This agreement is filed with the commission, as the commissioner is entitled to know the character of the obligation assumed by the employer or the insurer.

It is apparent that the extent of the disability in the instant case was not known when the agreement was entered into and filed. Temporary disability did exist, and final settlement could be made only on the basis of the time lost. When permanent disability, either total or partial, develops it then becomes necessary that a settlement is made on the basis of loss of function as provided by law. We must assume that the employer and the insurer in attempting to conform with the terms imposed by the statute, and required by the commission, acted in good faith. The employer agreed to pay the maximum of $15 per week. If the contention of counsel for appellee prevails then it must be assumed that the insurer is compelled to

be penalized to the extent of a sum in excess of his obligation expressed in an equitable settlement with the claimant. If this rule should prevail it would be difficult and unsafe for the insurer to proceed to the performance of his duty under his contract with the employer. The agreement of settlement must be filed. Efficiency in administration requires a prompt compliance with this rule. He must then proceed in good faith to meet his obligation based upon the actual disability resulting. He must deal frankly with all concerned in conforming to the spirit of the law and of honorable service. No one will assume to affirm that if a workman has signed an agreement which secures to him substantially less than the amount to which he is entitled under the schedule on the basis of time lost or injury actually sustained, that he will be bound by the agreement.

Is it any less fair to assume that when the insurer fully meets his obligation on the basis of disability actually resulting he may not rely upon the agreement? It is not intended that the Compensation Law of this state shall contain any jokers, nor is it intended that either employer, insurer or employee shall in any sense be penalized. Good-faith dealing is required and no court will indulge in an assumption inconsistent with legislative intent. The theory upon which the district court ruled is inequitable and unworkable.

Under the facts of the instant case it was necessary to wait the ultimate and final results before affording relief by compensation payments. The fracture of an arm may result finally in a temporary total disability, or it may produce a permanent impairment of the function, or it may produce the death of the injured person. This is the undetermined element in view. After such an injury an agreement is made to commence paying weekly compensation at the rate fixed by law. If the disability is but temporary the determination of the disability fixes the number of weeks. If a dismemberment results which is described in the schedule then the number of weeks is fixed by the schedule. If an injury results in the partial permanent loss of a member or the use thereof then the determination of the proportional loss is to be subject to the decision of the industrial commissioner and the court. The schedule governing certain specified permanent injuries fixes the periods during which the com-

pensation shall be paid, as the loss of an arm, 225 weeks. To determine the amount of compensation to be paid in weekly installment of 60 per cent of the average weekly wages the formula is; $R \times P = A$. R is the weekly rate, P is the period and A is the amount. The rate is constant while the other factor varies as the specified injuries vary.

To determine the amount of compensation when the loss is only a proportional part then the determinable factor must be the period as the period is the only variable factor. If the partial loss is one fourth of that produced by the total loss it follows that the partial loss is found by applying the fraction to the period fixed to the total loss. In the instant case it is one fourth of 225 weeks, or $56\frac{1}{4}$ weeks. The weekly compensation is constant when once determined and the proportional loss is to be applied to the period during which the weekly payments are to run.

In the case at bar there is no attempt to nullify the contract of settlement. The industrial commission approved the agreement with a clear understanding as to the meaning of the words: "Amount agreed upon $15 per week during the period allowed by law." This language can mean but one thing,—that the insurer is held in weekly payments in the sum fixed by law on the basis of earnings and for such period as the law provides for loss of time or loss of function as time may develop. The loss of an arm means payment for 225 weeks. 25 per cent of such loss under Paragraph 19 of Subsection j supra fixes $56\frac{1}{4}$ as the paying period. The weekly payment must be the maximum of $15 under the facts, so it automatically follows that the insurer is held in payment to the workman in the sum of $15 a week for $56\frac{1}{4}$ weeks. The judgment of the district court must be and is—*Reversed.*

EVANS, STEVENS, and ARTHUR, JJ., concur.

PRESTON, C. J., and WEAVER, J., dissent.

WEAVER, J. (dissenting). My first objection to the opinion prepared by Mr. Justice De Graff is that it discusses a case not presented by the record, and proceeds to construct a theory of

the law which has never expressly or impliedly been written into the statute. In its final analysis, this case presents the simple question whether an employee suffering an injury which is compensable under the Workmen's Compensation Act may enter into a settlement with the insurance company of his claim for damages, and thereafter enforce payment of the compensation according to the terms so agreed upon. By Section 2477-m25, Code Supplement, 1913, it is provided that, if the employer and the injured employee reach an agreement in regard to a claim for compensation under this statute, a memorandum thereof shall be filed with the commissioner, and if approved by him, "the agreement shall stand as approved and be efforcible for all purposes under the provisions of this act." Human language is hardly capable of a clearer or more unambiguous statement of the finality and enforcible character of an agreement thus perfected. Acting upon this statutory authority, the employer and employee did specifically and in writing agree that the latter should receive compensation at the rate of $15 per week during the period allowed by law. That settlement was approved by the proper officer; and if the statute means anything, if it is not a mere idle form of words, it is binding upon both parties, and neither may repudiate its obligation. The compensable character of the injury is no longer open to denial, the weekly award is fixed by agreement at $15 per week, and the period during which it is payable is that "allowed by law." Now, what is the period "allowed by law?" Turning to the statute, we find (Code Supplement, 1913, Section 2477-m9, as amended by Chapter 270, Laws of the Thirty-seventh General Assembly, and Chapter 220, Laws of the Thirty-eighth General Assembly), a specific period designated, during which the employee suffering permanent liability shall be allowed to receive a weekly compensation. If the injury be the permanent entire loss of an arm, the compensation, if not otherwise agreed upon, is fixed at a weekly payment of 60 per cent of the employee's "average weekly wages during 225 weeks;" but if the injury be permanent and *less* than entire, then the compensation shall bear the same relation to the scheduled amount for the greater injury as the disability shown bears to those named in the schedule. Translated into more familiar terms, the law provides for

compensation for the permanent loss of an arm, a weekly payment for the specific period of 225 weeks; but, if the loss be partial only, but permanent, the weekly compensation shall be proportionately less. This scaling down is not to be accomplished by cutting down the period of compensation, but by cutting down the weekly installments. There is no other reasonable construction of the statute; for the compensation which the law requires, unless otherwise agreed, is in weekly payments, and, the injury being permanent, the extension of the payments over the full period of time is or may be an element of value to the injured person.

In this case, the one question not foreclosed by the agreement of settlement was the period for the continuance of the weekly payment; and that, as we have seen, depended on a decision of the question of fact. Was the injury permanent? The parties not being able to agree upon this point, resort was had to the commissioner, to determine it. Evidence was heard, and the commissioner found that the use of the plaintiff's arm was permanently impaired to the extent of 25 per cent. That being determined, the "period allowed by law" for weekly payments becomes fixed by the terms of the statute at 225 weeks. Had there been no settlement by agreement upon a different compensation, the employee would have been entitled to receive a payment of 25 per cent of 60 per cent of his average weekly wages. His earnings at the time of his injury were $30 per week. Had the injury to his arm been entire and permanent, and no settlement had been made, his award would have been $18 per week for 225 weeks; or for a permanent impairment of the use of his arm to the extent of 25 per cent, his allowance for the same period would have been $4.50 per week. On no sound theory of the law or fact could the court or commissioner, in the absence of consent of the parties, increase the amount of the weekly installments above that sum, or reduce the length of the statutory period. Subject to the approval of the commissioner, the right of the parties to agree upon the compensation is absolute; and the fact that the payment so agreed upon is or proves to be more or less than might have been allowed, had the claim been contested and the award fixed upon hearing in the manner provided by statute, is immaterial. In the absence of fraud or

mistake, neither of which is here alleged or proved, the employer and the insurance company could lawfully undertake to pay, and the employee could lawfully bind himself to accept, the agreed compensation. It is a valid contract, upon sufficient consideration, and the court should not go out of its way to assist either party to escape its obligation. The majority seeks to avoid this manifest result by the adroit suggestion that the settlement was a mere temporary expedient for "weekly compensation, awaiting subsequent developments to determine the time during which payments must continue." We are further told by the majority that this "agreement is a very common form of agreement in compensation settlements," to meet the temporary needs of the injured employee. This theory and information must find their source in some occult power of divination possessed by the majority; for it is very certain that there is no hint of it in the statute, in the pleadings, or in the record in the case. The statutory provision for settlement fairly and unequivocally contemplates a binding and conclusive determination of the employee's compensation. It nowhere provides for a merely tentative or experimental or transitory settlement, or an *ad interim* allowance while waiting for "subsequent developments." There is no such provision or suggestion in the written agreement by which this settlement is evidenced. No such effect is claimed for it by counsel or by appellee, who may well congratulate themselves upon finding in the majority opinion a ready-made means for invalidating all statutory compensation settlements.

In face of such a record, the virtuous assurance of the opinion that the Compensation Act contains "no jokers," and that the insurer "must deal frankly with all concerned, in conforming to the spirit of the law of honorable service," has a very hollow sound.

The judgment below should be affirmed.

PRESTON, C. J., joins in the dissent.