DORÉ, Judge.
This is a suit for workmen’s compensation wherein plaintiff, William M.' Morgan, claims that while in the course of his employment' by L. O. Raborn, as a pipe-fitter, he sustained an accident on Nov. 1, 1949, as a result of which he was rendered permanently and totally disabled to do work of any reasonable character. He sues the Standard Accident Insurance Company, the workmen’s compensation insurer of his employer, L O. Raborn, for the maximum compensation of Thirty ($30) Dollars per week, with legal interest, during his disability not to .exceed four hundred (400) weeks and for medical expenses not to exceed Five Hundred ($500) Dollars with cost.
The defense is summed up in paragraphs 10 and 11. of the answer, as follows:
. “Respondent admits that on or about February 2, 1950, it received a report from its insured, L. O. Raborn, of an alleged accident and injury of plaintiff herein, but avers that plaintiff did not at any time suffer from any disability resulting from his alleged accident and injury and continued in his employment with the said Raborn and in the performance of the regular duties thereof from the date, of said alleged accident to the completion of the job on which he was working on or about January 31, 1950.
“Respondent further' shows that even if plaintiff was involved ■ in an accident; as alleged by him, and suffered any injury whatsoever as the result thereof, which respondent denies, as aforesaid, that such injury, if any, did not result in any disability which would prevent plaintiff from doing the same work he was doing at the time of the said accident or any other reasonable work.”
After trial of the case the trial judge came to the conclusion that the plaintiff had sustained a twenty-five (25%) per cent loss of function of the right arm and that accordingly under Section 8, subsection 1(d) 15 of the compensation law, LSA-RS 23:1221(4) (o) he concludes that plaintiff is entitled to compensation of twenty-five (25%) of two hundred (200) weeks; that is for fifty (50) weeks. He makes the further observation, however, that since the accident happened on November 1, 1949, and that plaintiff received his full wages from that date to February 1, 1950, that he should not recover for that period both wages and compensation and that the defendant should be allowed credit for these thirteen (13) weeks, leaving the plaintiff entitled to recover compensation for only thirty-seven (37) weeks at the maximum rate of Thirty ($30.00) Dollars per week, or Eleven Hundred Ten ($1110.-00) Dollars, with legal interest from February 1, 1950 until paid. The trial judge further found that plaintiff had expended or *109 owed the sum of Twenty ($20.00) Dollars to Dr. McVea for examinations and allowed this item as medical expense. Accordingly he rendered judgment in favor of plaintiff and against the defendant in the sum of Eleven Hundred Ten ($1110.00) Dollars for compensation and Twenty ($20.00) Dollars for medical expenses, plus interest and costs.
The plaintiff has appealed from this judgment, again urging that plaintiff should recover for total and permanent disability at the rate of Thirty ($30.00) Dollars for a period not to exceed four hundred (400) weeks.
The defendant has answered the appeal attacking the item for Twenty ($20.00) Dollars allowed for medical expenses and praying that this, item be set aside and that as thus amended that the judgment be affirmed and that the appellant be condemned to pay the costs before this court.
We agree with the trial judge that the fact of the accident is satisfactorily proved and is in accordance with plaintiff’s version thereof. According to plaintiff, he was engaged in his duties as a pipe-fitter when he slipped on a railing some 30 ■or 40 feet in the air, and to keep from falling to the ground he grabbed an iron ■railing with his right arm. This, he claims, ■caused a rupture of the right pectoralis maj or muscle which has not recovered' and which produces the disability of which he complains. It is shown by the evidence that after the accident the plaintiff, at first, thought that he had broken his arm but that after he removed his shirt and exercised his arm he knew that it was not broken and that he then went ahead and tried to do his work; that he couldn’t move bis arm as he should and that after complaining to his foreman that his arm was hurting the foreman insisted that he go to a doctor and that accordingly he went to .see Dr. Simmons, a company doctor of 'Stone and Webster, building contractors, who he states examined his arm and told him that it was only a sprain, and had his nurse to put the heat light on it and then .discharged him to go back to work.
After the accident, of November 1, 1949, it is admitted that plaintiff remained 'on the job until about February 1, 1950, aiid received the same wage as heretofore, to-wit $102 per week. He says, however, that during that time he was not able to do his regular work and that he had to have the aid and cooperation of his fellow workers in order to' hold down his job, which testimony is corroborated by his fellow workers. After this job was completed on February 1, 1950, he did. no .further work until April 19, 1950, when he was employed as pipe-fitter by Caldwell and McCann for whom he was working when the case was tried at a weekly wage of Ninety-two ($92.00) Dollars per .week. Again, plaintiff contends that although still classified as a pipe-fitter he cannot perform the vario-w tasks required of a-pipe-fitter and that hs is only able to hold his present job because of the ássistance of his fellow employees. In this contention he is amply supported, by the testimony of fellow employees.
With reference to his actual injury, as stated before, the plaintiff was first examined by Dr. Simmons right after the accident who diagnosed the- case as muscle-sprain and who applied heat treatment,. Sometime later he was again, examined by Dr. Simmons who on his .second examination found that he had a ruptured muscle and referred him to Dr. George. There is no report from either of these physicians in the record and neither of them testified in the case. Plaintiff testified that Dr. George told him he would make a report to his employer, but whether he did or did not make such a report is not disclosed by the evidence.
The only expert testimony with reference to the injury in the record consists of the reports and testimony of Dr. Charles Mc-Vea, who examined plaintiff on' January ,10, 1950 and again on January 30, 1950. The first report.is as follows:' .
“On January 9, 1950, I saw Mr. W. M. Morgan, who states that while working on a Gulf States Utilities job for Mr. L; O. Raborn he fell and caught himself with his right arm and at the same time hurt his right arm and chest. This occurred about *110 November 1, 1949. He suffered no other injury. He was treated by a local physician and returned to work. He continued to work with the ache and pain in his arm and noticed some swelling and • some discoloration and bruising .in the arm near the .shoulder and in the chest near the junction of the right arm with the chest. The arm improved but continued to hurt him some and then he hurt it again in lifting. He saw his physician again who told him that he had a ruptured muscle. Since that time he has seen several physicians who have discussed his trouble with him.
“This man works as a construction worker and when he is not working in construction he works as a farmer. On examination it is obvious that this man has ruptured a portion, if not all, of his pectoralis major muscle in the right side of his chest. This muscle is the large muscle of the chest wall which runs from the chest to the upper portion of the arm near the shoulder and acts to pull the arm into the chest and to turn the arm inward on its long axis. It is a powerful muscle and this man has loss of the function of this muscle as a result of his accident.
“Diagnosis: Rupture of the right pecto-ralis major muscle.
“This is an unusual accident and is disabling to' the point that this man has a twenty five percent 'disability in his right arm which is permanent. Repair of this muscle might be attempted by operative means but no one can promise what the result will be, and if this man can continue to do work without operative repair to this injury, I believe it advisable. If he is unable to follow his occupation and depends upon this occupation for a livelihood, I would suggest operative repair of the muscle be attempted. However, if the rupture is in the muscle itself and not in the tendon to the muscle successful repair is not probable. If the rupture is in the tendon of the muscle, successful repair is possible. Only exploration of the chest wall and the arm itself through operative means would determine just exactly where the rupture of this muscle is. I believe the twenty-five percent disability in his right arm can be considered to be permanent.”
Dr. McVea’s second report is as follows: “I again saw Mr. W. M. Morgan on whom I rendered a report on January 10, 1950. At this time Mr. Morgan shows no particular difference on examination than as reported to you on January 10, 1950. I ■examined Mr. Morgan’s chest and the break in ,the pectoralis major muscle is quite evident. I do not find any more swelling at this time than I found at the time of my last examination and I do not find any bruising or evidence of hemorrhage under the skin in this injured area. I would like to say, however, that Mr. Morgan may expect some swelling in the axilla and in the right side of the chest from use of the arm in working for some time. This will gradually disappear as the torn muscle regresses in size which it will do because of the inactivity due to inability to use this muscle.”
The pertinent testimony of Dr. McVea is as follows:
“Q Will you show the Court just what is the significance of the rupture which plaintiff suffered. Demonstrate to the Court. A On the man?
“Q Yes. A I believe you can see the difference in the size here and here. There are two muscles in the chest wall which have their origin on the ribs and collarbone. They extend to the upper portion of the arm, and the muscle which has ruptured is the muscle that turns the arm in this way, rotates it inward. It is the longer of the two muscles which extend from the chest to the upper portion of the arm and the more important of the two muscles. When he pulls the muscle you can see what happens. He has torn this muscle or the muscle insertion or tendon. It is more probable that the muscle is torn, as the appearance of the chest wall is such as to make me think that. Now, he can turn his arm inward in this manner but he can’t do it as well as he could or as strongly as he could before this muscle was ruptured. This muscle also has the function when the arm is raised of pulling the arm across the chest wall in a manner that is familiar to all of us as a swimming stroke. He just doesn’t have the strength in this arm in *111 those two manoeuvres that he had before this muscle was ruptured.
“Q Has 'there been a decrease in the ability of the plaintiff to grasp things lower than his waist with his right hand? A Only to the degree that -he would use his arm in pulling the arm-across the body or turning the arm inward on its long axis. The loss of function of any one muscle affects the use of a part to some minor degree in the function of the other muscles of the arm because there is a tendency of the muscle groups to act together in performing their normal functions.”
By The Court:
“Q What about the permanency of that condition? A That’s a permanent loss unless some repair could be done on that muscle or on the tendon.
“Q You mean surgery might do some good? A It possibly might be repaired surgically. We would have about a seventy-five percent chance-of a.successful repair if the tendon is ■ ruptured. ■ If the muscle is ruptured chances of successful surgery are very remote. I believe, the muscle is torn, and I would not recommend surgery for this man.
■ “Q Could you say his disability in percentage? A I think he has a twenty-five percent loss of function of his right arm which I believe is permanent.”
In the course of his testimony Dr. Mc-Vea stated that there has been a decrease in plaintiff’s ability to climb ladders and ropes and to use a hammer. He further said that plaintiff has lost some of his ability to work 'overhead due to the loss of. a part of the function o-f the arm in bringing the arm down and across the chest wall.
Dr. McVea stated that the injured muscle is not greatly involved in lifting pipe etc., because in such exercise the muscles of the back and not of the arms-are subjected to the greatest strain.
From this testimony taken in connection with the testimony of plaintiff and his fellow workers, it is our opinion that the conclusion of the trial judge that the plaintiff sustained a permanent partial disability of twenty-five (25%) percent of the use or function of the right, arm is correct. The preponderance of the evidence is to the effect that the plaintiff is still able to pursue his calling as. a pipe-fitter, but that he is handicapped and must secure the assistance and cooperation of. his fellow employees in doing so, and that consequently he is entitled to compensation for the aforesaid partial disability.
The correct method by which to compute the compensation payable for a specific disability amounting to the partial loss of function of a member is to take the proportion of the partial loss from a sixty-five per cent of the weekly wage and allow such amount as compensation for the number of weeks permitted for the total loss of the respective member. Thornton v. Haynesville Lumber Co., La.App., 155 So. 784; Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117; Smith v. Turner Lumber Co., La.App., 174 So. 699, 701; Storm v. Johnson, La.App., 23 So.2d 639; Hughes v. Enloe, La.App., 31 So.2d 878.
Using the proper rule as stated above, the trial judge should have rendered his judgment for twenty-five (25%) per cent of sixty-five (65%) per cent of One Hundred Two ($102.00) Dollars, the undisputed weekly wage of plaintiff, which amount is $16,575, for a period of two hundred (200) weeks, less, a credit of thirteen (13) weeks for the period when he collected wages.
As to the allowance of medical expenses, we are of the opinion that the charges of Dr. McVea of Twenty ($20.00) Dollars should not be allowed plaintiff as a medical expense. This item was.not incurred in the treatment of the plaintiff, since he was merely examined and not treated by Dr. McVea.
For the reasons set forth hereinabove, it is ordered that the judgment below is amended by decreeing that plaintiff is awarded compensation for partial permanent loss of function of his right arm for a period of two hundred (200) weeks from November 1, 1949, at the rate of $16,575 'per week, less .a credit of thirteen (13) weeks for the period when he collected *112 his wages, plus legal interest on delinquent instalments, and that it is further decreed that the charge of $20 of Dr. McVea be disallowed as a medical expense, and as thus amended'the judgment be affirmed, all at the cost of defendant.
Amended and affirmed.