17387

**G. E. MOORE CO.** et al., Petitioners, v. Henry C. **WALKER**, Jr., and James J. Reid, Individually and as members of, and constituting the South Carolina Industrial Commission, Respondents.

(102 S. E. (2d) 106)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *Butler & Chapman,* of Spartanburg, *Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, and *Whaley & McCutcheon,* of Columbia, *for all petitioners except International Paper Company, and Smith & Moore,* of Georgetown, *for International Paper Company, Petitioners,*

*Messrs. T. C. Callison, Attorney General,* and *Julian L. Johnson, Assistant Attorney General,* of Columbia, *for Respondents,*

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Ray H. Vogel, Amicus Curiae,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *Butler & Chapman,* of Spartanburg, *Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, and *Whaley & McCutcheon,* of Columbia, *for all Petitioners except International Paper Company,* and *Smith & Moore,* of Georgetown, *for International Paper Company, Petitioners,*

February 10, 1958.

OXNER, Justice.

We are called upon in this case to determine the correct method of calculating compensation payable under our Workmen's Compensation Act for partial loss, or for partial loss of use, of various members of the body enumerated in Section 72-153 of the 1952 Code.

From the enactment of this legislation in 1935 to August, 1957, the Industrial Commission used the following for-

mula in determining compensation for partial specific losses under Section 72-153:

"Maximum number of weeks compensable for total specific loss X the percentage of specific loss X the weekly compensable rate (6% of average weekly wage, but not more than $35.00, nor less than $5.00)."

On August 5, 1957, the Commission, one member dissenting, announced that effective as of August 1, 1957, the following formula would be applied:

"Average weekly wage X compensation rate X percentage of anatomical loss for the statutory period as specified."

It was further stated:

"Application of this formula is subject to the $35.00 maximum and the $5.00 minimum."

Shortly thereafter a number of employers and insurance carriers filed a petition in this Court in which they alleged that the new formula adopted by the Commission was erroneous and issued without lawful authority and that the enforcement thereof would work a great injustice. They asked this Court to assume original jurisdiction and declare the new formula null and void and enjoin the Commission from enforcing it. By an order of the Chief Justice, issued on October 26, 1957, we assumed original jurisdiction of the case, restrained the Commission *pendente lite* from enforcing the new formula and required it to show cause why a permanent injunction should not issue. A return was duly filed by the Industrial Commission and the case heard at the December, 1957, term of this Court.

The sole question presented is the proper formula to be used in determining compensation payable for specific (schedule) partial losses under Section 72-153. This section can better be understood after reviewing the two preceding sections.

Section 72-151, as amended in 1953, 48 St. at L. 103, provides that in the case of total disability from an injury, there shall be paid "to the injured employee during such

total disability a weekly compensation equal to sixty per cent of his average weekly wages, but not more than thirty-five dollars, nor less than five dollars a week; and in no case shall the period covered by such compensation be greater than five hundred weeks."

Under Section 72-152, as amended in 1953, 48 St. at L. 103, in the case of partial disability resulting from an injury, the employer, except as otherwise provided in Section 72-153, is required to pay "to the injured employee during such disability a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than thirty-five dollars a week. In no case shall the period covered by such compensation be greater than three hundred weeks from the date of injury." This section further provides: "In case the partial disability begins after a period of total disability, the latter period shall be deducted from the maximum period allowed in this section for partial disability."

The first paragraph of Section 72-153 reads as follows: "In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein." There is then separately listed various members of the body for the loss, or the loss of the use, of which compensation is to be paid on the basis of 60% of the average weekly wage for certain specified periods, varying in each case with the nature and gravity of the loss. For instance, "For the loss of a thumb sixty per cent of the average weekly wages during sixty weeks"; "For the loss of a third finger, sixty per cent of the average weekly wages during twenty weeks"; "For the loss of an arm, sixty per cent of the average weekly wages during two hundred weeks"; "For the loss of an eye, sixty per cent of the average weekly wages during one hundred weeks."

After this schedule is the following paragraph which gives rise to this controversy:

"The compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss."

The concluding paragraph of Section 72-153 is as follows:

"The weekly compensation payments referred to in this section shall all be subject to the same limitations as to maximum and minimum as set out in § 72-151."

In our discussion of the question presented it is well to keep in mind that an award for total disability under Section 72-151 or for partial disability under 72-152 is predicated upon loss of earnings or of earning capacity. *Keeter v. Clifton Manufacturing Co.,* 225 S. C. 389, 82 S. E. (2d) 520, 522. It was there stated: "Loss of earning capacity is the criterion." Compensation for the loss of a member or the loss of the use of a member under Section 72-153 is not dependent on actual wage loss. *Hoke v. Cherokee County,* 216 S. C. 376, 58 S. E. (2d) 330; *Roper v. Kimbrell's of Greenville, Inc.,* S. C., 99 S. E. (2d) 52. The fact that the claimant after his injury is regularly employed at greater earnings than before is immaterial. In determining the amount to be awarded under Section 72-153, wages are considered only to a certain limit, and then only for the purpose of determining the amount to be allowed per week. The period during which the weekly payments are to continue is based solely on the character of the injury and not upon the earnings or earning capacity of the injured employee.

The amount which an employee receives for total loss under Section 72-153 is determined by applying a certain percentage of his weekly wages to the period specified. Compensation for partial loss "shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss." The word "payments" refers to the payments for the total loss of a member in the preceding 18 subdivisions of Section 72-153. The statute

clearly contemplates that the compensation for partial loss of a member shall be that amount which the percentage of incapacity bears to the amount which the claimant would have been permitted to recover if he had sustained a complete loss of such member. The underlying basis is proportionate compensation and this can only be achieved by applying the percentage of incapacity to the period specified for the loss of a member. We think the Commission was clearly in error in making the amount of the weekly payments the variable element.

The new rule adopted by the Commission practically nullifies the rule of proportion for partial incapacity as contained in Section 72-153. This clearly appears from the charts presented to us. For instance, under the new rule an employee earning $90.00 a week would receive exactly the same compensation for 65% loss of the arm as for a 100% loss and an employee earning $40.00 a week would receive exactly the same compensation for 20% loss of the arm as for a 5% loss. On the other hand, the old formula results in exact proportionate compensation. Surely it was not contemplated that one employee who has received a permanent partial incapacity to a specific member of the body should receive as much compensation as another employee who has sustained a complete loss of the same member of the body. In *Baltimore & Philadelphia Steamboat Company v. Norton,* 284 U. S. 408, 52 S. Ct. 187, 188, 76 L. Ed. 366, the Court in construing the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A § 901 *et seq.,* said: "It may not reasonably be assumed that Congress intended to require payment of more compensation for a lesser disability than for a greater one including the lesser. Nothing less than compelling language would justify such a construction of the act." As there pointed out, legislation of this kind should be construed, if possible, so as to avoid incongruous results.

We think that a legislative intent to reduce the number of weekly payments rather than the amount of such weekly

payments in awarding proportionate compensation for the partial loss of a member under Section 72-153 is disclosed by subsections (6) and (10), which are as follows:

"(6) The loss of the first phalange of the thumb or any finger shall be considered to be equal to the loss of one-half of such thumb or finger and the compensation shall be for one-half of the periods of time above specified."

"(10) The loss of the first phalange of any toe shall be considered to be equal to the loss of one-half of such toe and the compensation shall be for one-half the periods of time above specified."

While not controlling, proper for consideration is the fact that from the enactment of our Workmen's Compensation Law in 1935 to the adoption of the new formula in 1957, Section 72-153 was consistently construed by the Commission in determining compensation payable for specific partial losses as making the number and not the amount of the weekly payments the variable element. During that long period of time such construction was apparently never challenged, nor was any effort ever made in the Legislature to amend the statute. In *Etiwan Fertilizer Company v. South Carolina Tax Commission*, 217 S. C. 354, 60 S. E. (2d) 682, 684, it was stated: "We have held in many cases that where the construction of the statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly for a long period of time, such construction is entitled to weight, and should not be overruled without cogent reasons." This principle was reaffirmed by us in the recent case of *Roper v. South Carolina Tax Commission*, S. C., 99 S. E. (2d) 377.

It appears that the general scheme of the compensation acts of almost all the States is to reduce the number, and not the amount, of the payments for the partial loss, or loss of use, of a member. While some of the statutes are more explicit in this respect than ours, with few exceptions the courts have construed provisions similar to the one now under consideration as reducing the period of compensation,

thereby making the number and not the amount of weekly payments the variable factor. *Richardson v. Maryland Casualty Co.,* 41 Ga. App. 520, 153 S. E. 524; *Galloway Coal Co. v. Stanford,* 215 Ala. 79, 109 So. 377; *Spurgeon v. Iowa & Missouri Granite Works,* 196 Iowa 1268, 194 N. W. 286; *Phonville v. New York & Cuba S. S. Co.,* 226 N. Y. 622, 123 N. E. 258; *Lewis v. Allied Contractors,* 118 Neb. 605, 225 N. W. 770; *Nowlin v. Mississippi Chemical Co.,* 219 Miss. 873, 70 So. (2d) 49; *Follett v. Voris,* 5 Cir., 205 F. (2d) 542; *Southern Stevedoring & Contracting Co. v. Sheppeard,* D. C., 1 F. Supp. 867, *Richardson v. Maryland Casualty Co., supra,* involved a provision in the Georgia statute almost identical with ours.

Louisiana, Texas and North Carolina appear to have reached a different conclusion. However, several courts have expressly rejected the reasoning of the Louisiana and Texas decisions. In *Nowlin v. Mississippi Chemical Co., supra,* 219 Miss. 873, 70 So. (2d) 49, 51, it was said: "Appellant finds some authority for his contention in decisions of the Louisiana and Texas courts. *Morgan v. Standard Accident Insurance Co.,* La. App., 51 So. (2d) 107, and cases there cited, and *Texas Employers' Insurance Ass'n v. Holmes,* 145 Tex. 158, 196 S. W. (2d) 390, and cases there cited. However, if the difference between our act and the statutes, which those cases construe, do not distinguish them from this case, we think that the construction, which is now being placed on our act, is sounder, and we decline to follow those authorities." The North Carolina case, *Watts v. Brewer,* 243 N. C. 422, 90 S. E. (2d) 764, decided January 13, 1956, cites no authority and the question now before us was apparently only casually considered. It is significant that the Legislature of North Carolina at the next session amended the statute so as to expressly make the percentage of disability apply to the period of compensation.

Counsel for the Industrial Commission say that the new formula was based on our decision in *Utica-Mohawk Mills v. Orr,* 227 S. C. 226, 87 S. E. (2d) 589, 591. We think

the Commission has misconstrued this decision. We were called upon in that case to determine the proper method of calculating partial disability under Section 72-152 which before the 1953 amendment provided for the payment "to the injured employee during such disability a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than twenty-five ($25.00) dollars a week, and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of injury." The employee in that case sustained a 30% permanent disability and sometime thereafter quit work. The employer and carrier contended that the percentage of disability should be applied to 300, the number of weeks. We held that this construction was not warranted and that the proper method was to take 30% of the wages and allow recovery for 60% of that figure for 300 weeks.

We adhere to that decision. As pointed out therein, it is exactly in accordance with the terms of Section 72-152. But we made no attempt to construe Section 72-153. In fact, we stated: "Section 72-153 provides certain awards for specific injuries to various members of the body, which is of no present application." It is true that in that case we referred with approval to the dissenting opinion in *Spurgeon v. Iowa & Missouri Granite Works, supra,* 196 Iowa 1268, 194 N. W. 286, and the opinion of the Court in *Morgan v. Standard Accident Insurance Co., supra,* La. App., 51 So. (2d) 107. But we did so to support our construction of Section 72-152 and did not undertake to say that the Louisiana case and the dissenting opinion in the Iowa case represented the proper construction of Section 72-153.

The return to the rule to show cause is adjudged insufficient; the formula promulgated by the Commission in August, 1957, is declared null and void and the Commission is permanently enjoined from enforcing same.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.